**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Roscoe Emory DEAN, Jr., and John Thomas Bigley, Defendants-Appellants.**

**No. 80–7466.**

United States Court of Appeals, Fifth Circuit.* Unit B

Jan. 22, 1982.

* Former Fifth Circuit case, Section 9(1) of Public Law 96–452—October 14, 1980.

Zuckerman, Spaeder, Taylor & Evans, John F. Evans, Michael R. Smith, Washington, D. C., for defendants-appellants.

William A. Wehunt, Atlanta, Ga., for Bigley.

Thomas R. Taggart, Savannah, Ga., for Dean.

Melissa S. Mundell, William H. McAbee, II, Asst. U. S. Attys., Savannah, Ga., for plaintiff-appellee.

Before RONEY, VANCE and RANDALL, Circuit Judges.

VANCE, Circuit Judge:

Appellants Roscoe Emory Dean, Jr. and John Thomas Bigley were convicted after trial by jury on three counts of conspiracy to import cocaine, marijuana, and methaqualone in violation of 21 U.S.C. §§ 956, 963. Bigley alone was convicted on one additional count of using a firearm in the commission of a federal felony in violation of 18 U.S.C. § 924(c)(2).[1] These crimes were committed as episodes in a tragicomic effort to enlist narcotics interests in Dean's campaign to become governor of the State of Georgia. Dean and Bigley allege numerous errors at trial.

In the summer of 1979 Dean, then a state senator in the Georgia legislature, asked James Chaffin to introduce him to someone with connections in the South American drug importation trade. Dean explained to Chaffin that he intended to solicit $10,000,-000 from such a person for his 1982 gubernatorial campaign in exchange for his promise to facilitate the importation of drugs into Georgia if he were elected governor. Chaffin consulted with his attorney, Hirsch Friedman, and decided to act as a government informant in exchange for leniency in an unrelated state criminal prosecution against him. Friedman contacted the Georgia Bureau of Investigation which thereafter coordinated the probe.

Chaffin arranged for Dean and Friedman to meet August 24, 1979 on Jeckyll Island, Georgia. At that meeting, Dean explained his plan to assist the drug smugglers in exchange for campaign contributions. He also expressed his concern about surveillance devices and suggested that they speak in riddles. Dean's concern was well founded because this conversation was being recorded surreptitiously by Friedman, as were most of the later conversations between the two.

Dean and Friedman next met September 6, 1979 on Jeckyll Island. Dean added a number of details to his plan to facilitate importation as governor, including the appointment of narcotics interests to law enforcement positions and the selective prosecution of rival drug importers. On October 12, 1979 Friedman brought Sergio Abreu to a meeting with Dean on Jeckyll Island. Abreu, a Florida law enforcement agent, posed as a Colombian involved in Friedman's drug organization. Dean informed Abreu that an associate of his, Richard Daily, was negotiating with narcotics interests in Tampa, Florida for additional campaign contributions. Dean stated that Daily was at a friend's house four or five minutes away from the hotel on Jeckyll Island at which they were meeting. That placed Daily in the proximity of the home of Dean's coappellant, Bigley.[2]

On November 5, 1979, Friedman informed Dean that Abreu had agreed to Dean's scheme. On January 9, 1980, however, Friedman told Dean that Abreu had died in an earthquake in Colombia, and that different arrangements would have to be made. Dean proposed that they meet on January 11, 1980 at Bigley's home on Jeckyll Island. At this meeting, which Bigley did not attend, Friedman told Dean that the narcotics organization wanted to test his trustworthiness by undertaking an importation at a site suggested by Dean. Although Dean expressed reservations about safety, he

---

1. Dean was sentenced to concurrent five year prison sentences and fined $10,000 for each offense. Bigley was sentenced to three concurrent one year prison terms for the conspiracy convictions and placed on three years probation for the firearms violation.

2. Bigley was employed at the time at a wastewater sewage treatment plant on Jeckyll Island. Evidence showed that he had been a political confederate of both Daily and Dean for a number of years.

agreed to the test. He also expanded upon his plans to launder the $10,000,000 campaign contribution. The meeting was interrupted when a neighbor of Bigley appeared at the front door. Dean telephoned Bigley at his fiancee's house and directed him to tell anyone who inquired that Dean was meeting with his lawyer about the campaign.

Dean and Friedman agreed that Bigley, using the alias of "Moore," would meet Friedman at a bank in Savannah to count $10,000,000. Dean informed Friedman that Bigley was "in the thing with us" but did not know Friedman's identity.[3] On January 18, 1980 Dean drove Bigley to a point several blocks from the bank. Bigley identified himself to Friedman as "Mr. Moore" and proceeded to count $7,500,000 contained in several safety deposit boxes in a bank vault. While counting, Bigley checked for counterfeits and carried on a general conversation with Friedman about marijuana from Colombia and gambling. Dean subsequently stated that Bigley expressed his suspicion that Friedman was a government agent.

During the next week, Dean and Friedman undertook a "dry run" of the trial drug importation.[4] Dean reported to Friedman that Bigley had observed the local police station during the exercise and that Bigley had later gone to Miami to meet with a Haitian about laundering the money.

On January 28, 1980 Dean and Friedman drove to the Savannah airport accompanied by Bigley in a separate car. Dean's purpose was to receive custody of the $10,000,000. When Bigley arrived at the airport, he noticed frantic activity by law enforcement personnel. He waved down Dean and Friedman and informed them of what he had seen. Soon thereafter, Friedman effectuated a citizen's arrest and confiscated a Smith and Wesson .38–caliber revolver that Bigley carried in a shoulder holster.

At trial, Dean declined to testify on his own behalf. Bigley testified that he had no knowledge of the narcotics-related purpose of the dealings between Dean and Friedman, but had been told by Dean that the $10,000,000 was part of a legitimate real estate transaction. He also denied that he had observed the local police station for Dean or had made any arrangements to launder money.[5]

### I.

Both appellants challenge the sufficiency of the evidence against them on the conspiracy counts. The bases for these challenges differ. Bigley claims that the government failed to prove beyond a reasonable doubt that he conspired with Dean to violate the narcotics laws. Dean claims that his conviction cannot stand if Bigley is acquitted because Bigley is the only person with whom Dean is accused of conspiring. *See, e.g., United States v. Sheikh*, 654 F.2d 1057, 1062 (5th Cir. 1981); *United States v. Espinosa-Cerpa*, 630 F.2d 328, 331 (5th Cir. 1980). We find that the evidence was sufficient to convict both Dean and Bigley of conspiracy to import narcotics.

The standard of review as to sufficiency of the evidence is whether a reasonably minded jury must necessarily entertain a reasonable doubt of the defendant's guilt. *United States v. Rodriguez*, 654 F.2d 315, 317 (5th Cir. 1981); *United States v. Kelley*, 630 F.2d 302, 303 (5th Cir. 1980). In conducting that review, we view the evidence in the light most favorable to the government, *Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942), and we accept all credibility choices and draw all reasonable inferences that support the jury's verdict. *United States v. Staller*, 616 F.2d 1284, 1292 (5th Cir.), *cert. denied*, 449 U.S. 869, 101 S.Ct. 207, 66 L.Ed.2d 89

---

**3.** Dean also stated that Bigley did not know about the narcotics-related purpose of the meetings between Dean and Friedman. The jury was of course free to believe or disbelieve this statement.

**4.** Dean played a major role in the planning of this dry run.

**5.** Bigley admitted traveling to Miami on the date in question, but claimed that the purpose of his visit was to meet his fiancee's parents.

(1980); *United States v. Barrentine*, 591 F.2d 1069, 1083 (5th Cir.), *cert. denied*, 444 U.S. 990, 100 S.Ct. 521, 62 L.Ed.2d 419 (1979).

▉ In order to sustain the convictions of Dean and Bigley, it must appear that both men agreed to violate the narcotics laws. *United States v. Diaz*, 655 F.2d 580, 584 (5th Cir. 1981) *cert. denied*, —— U.S. ——, 102 S.Ct. 1257, 71 L.Ed.2d 448 (1982). *See also United States v. Spradlen*, 662 F.2d 724, 727 (11th Cir. 1981). The government need not show that either man committed an overt act in furtherance of the conspiracy. *United States v. Rodriguez*, 612 F.2d 906, 919–20 n.37 (5th Cir. 1980) (en banc), *aff'd sub nom.*, *Albernaz v. United States*, 450 U.S. 333, 101 S.Ct. 1137, 67 L.Ed.2d 275 (1981); *United States v. Michel*, 588 F.2d 986, 994 (5th Cir.), *cert. denied*, 444 U.S. 825, 100 S.Ct. 47, 62 L.Ed.2d 32 (1979). The existence of an agreement may be inferred, however, from the concert of action between the two men. *United States v. Wilson*, 657 F.2d 755, 759 (5th Cir. 1981); *United States v. Arredondo-Morales*, 624 F.2d 681, 684 (5th Cir. 1980).

▉ In this case, the only serious question of appellants' guilt is whether Bigley knew of the narcotics-related objective of the dealings between Dean and Friedman. Taken in the light most favorable to the government, the evidence shows:

(1) Dean's statement to Friedman that Bigley was "in the thing with us."

(2) The meeting between Dean and Friedman at Bigley's house.

(3) Dean's instructions to Bigley to offer an explanation to Bigley's neighbors of Dean's presence.

(4) Bigley's use of the alias agreed upon by Dean and Friedman.

(5) The meeting between Bigley and Friedman at the bank to count millions of dollars and their discussion of marijuana from Colombia.

(6) Dean's statement that Bigley suspected Friedman of being a government agent.

(7) Bigley's meeting with a Haitian in Miami to arrange for the laundering of the $10,000,000.

(8) Bigley's activities around a police station during a "dry run" of narcotics importation.

(9) Bigley's travel to the Savannah airport with Dean and Friedman while carrying a firearm.

(10) Bigley's departure from the Savannah airport to warn Dean and Friedman of the activity of law enforcement personnel.

This evidence certainly suffices to allow a reasonable jury to discredit Bigley's statement that he believed he was assisting a real estate transaction. *Cf. United States v. Hinds*, 662 F.2d 362, 366 (5th Cir. 1981); *United States v. Spradlen*, 662 F.2d at 727 (jury could reasonably disbelieve defendant's innocent explanation of events). It also suffices to establish beyond a reasonable doubt that Bigley knew of the narcotics-related purpose of the activities involving himself, Dean, and Friedman. This is not a case in which the only evidence of Bigley's guilt is association with other conspirators, *see, e.g., United States v. DeSimone*, 660 F.2d 532, 537–38 (5th Cir. 1981); *United States v. Reyes*, 595 F.2d 275, 280–81 (5th Cir. 1979), or activity that is suspicious though reasonably susceptible of an innocent interpretation. *See, e.g., United States v. Glasgow*, 658 F.2d 1036, 1040–42 (5th Cir. 1981); *United States v. Littrell*, 574 F.2d 828, 832–33 (5th Cir. 1978). Here, actions such as preparing for the laundering of money, observing a police station during a dry run of a narcotics importation, and warning Dean and Friedman of police activity at the airport leave no reasonable doubt that Bigley knew that the purpose of the activities in which he and Dean were engaging was criminal. *See United States v. Robertson*, 659 F.2d 652, 656–57 (5th Cir. 1981); *United States v. Alvarez*, 625 F.2d 1196, 1198–99 (5th Cir. 1980) (en banc), *cert. denied*, 451 U.S. 938, 101 S.Ct. 2017, 68 L.Ed.2d 324 (1981). These actions, taken together with the statement by Dean that Bigley was in the organization, Bigley's re-

ported statement that Friedman was a government agent, and comments by Bigley regarding narcotics while he was counting out the millions of dollars to be used in the drug deal, leave no reasonable doubt that Bigley knew that the criminal activity in which he was involved was related to narcotics. *See, e.g., United States v. Mesa*, 660 F.2d 1070, 1074–75 (5th Cir. 1981); *United States v. Hernandez*, 646 F.2d 970, 979 (5th Cir. 1981).[6]

Although we find that there was sufficient evidence of a conspiracy to violate the narcotics laws, there is insufficient evidence to prove the existence of three separate agreements as alleged in the indictment. The government concedes as much in its brief. Since Dean was assessed a $10,000 fine for each count, this error was not harmless under the concurrent sentence doctrine. We therefore vacate Dean's sentence and remand this case to the trial court with instructions that the convictions of Dean on two conspiracy counts, at the election of the government, be reversed and dismissed. The conviction on the remaining conspiracy count shall be deemed affirmed and the trial court shall resentence Dean on that one count. *See United States v. Bradsby*, 628 F.2d 901, 906 (5th Cir. 1980). Although the error may be harmless with respect to Bigley, we conclude that the same disposition should be made in his appeal from the conspiracy convictions. *Id.* His conviction on the firearms count, however, is affirmed and the sentence that has been imposed by the trial court on that count shall remain in force.

## II.

Bigley asserts that the trial court erred in admitting Dean's hearsay statements against Bigley under the coconspirator exception of rule 801(d)(2)(E) of the Federal Rules of Evidence. We conclude that the trial court committed no error in this regard.

**6.** Because we find that the evidence was sufficient to convict Bigley, we necessarily find that Dean's sufficiency argument which was

■ Our decision in *United States v. James*, 590 F.2d 575, 582–83 (5th Cir.) (en banc), *cert. denied*, 442 U.S. 917, 99 S.Ct. 2836, 61 L.Ed.2d 283 (1979), holds that evidence is admissible under the coconspirator exception only if it appears by the close of all the evidence that the government has shown by a preponderance, independent of the declarant's statements, that a conspiracy existed, that the defendant and the declarant were members of that conspiracy, and that the statements were made in furtherance of the conspiracy. *See also United States v. Chaney*, 662 F.2d 1148, 1153 & n.6 (5th Cir. 1981); *United States v. Horton*, 646 F.2d 181, 185 (5th Cir. 1981). Within our scheme in *James*, the primary responsibility for determining the admissibility of the challenged statements belongs to the trial judge. *United States v. Perry*, 624 F.2d 29, 31 (5th Cir. 1980); *United States v. Grassi*, 616 F.2d 1295, 1300 (5th Cir.), *cert. denied*, 449 U.S. 956, 101 S.Ct. 363, 66 L.Ed.2d 220 (1980). The trial judge is obliged to consider the evidence of both the defendant and the government. *United States v. Ricks*, 639 F.2d 1305, 1309 (5th Cir. 1981). We will not overturn the judge's finding based upon his consideration of the merits of each side unless it is clearly erroneous. *United States v. Perry*, 624 F.2d at 30–31.

■ In this case, the independent evidence included, *inter alia*, Bigley's use of the alias agreed upon by Dean and Friedman, Bigley's discussion of narcotics while counting money in the bank vault, Bigley's departure from the airport when he observed police, and his efforts to warn Dean and Friedman not to go to the airport. Evidence on Bigley's behalf included statements by Dean that Bigley did not know about narcotics and Bigley's own testimony that he believed he was involved in a real estate transaction.

We cannot say, based upon this evidence before the trial judge, that he committed clear error in finding that the government

premised upon the proposition of Bigley's innocence must fail.

has proved the existence of a conspiracy between Dean and Bigley by a preponderance. Evidence similar to that which the government presented has been found by courts to be probative of the existence of a conspiracy between a declarant and a defendant. *See, e.g., United States v. Chaney*, 662 F.2d at 1153 (use of alias agreed upon by defendant and declarant); *United States v. Mesa*, 660 F.2d at 1074–75 (conversations at prearranged sites with others in conspiratorial group); *United States v. D'Amato*, 493 F.2d 359, 365 (2d Cir.), *cert. denied*, 419 U.S. 826, 95 S.Ct. 43, 42 L.Ed.2d 50 (1974) (evasive action to avoid police surveillance); *United States v. Bickford*, 445 F.2d 829, 830 (1st Cir.), *cert. denied*, 404 U.S. 946, 92 S.Ct. 302, 30 L.Ed.2d 262 (1971) (alerting coconspirator and informant that someone was approaching). Also, we cannot on this record fault the trial judge for making credibility choices unfavorable to the defense. *Cf. United States v. Hernandez*, 646 F.2d at 973 (trial judge does not credit defendant's story that he did not know that the boxes he loaded into agent's car contained narcotics); *United States v. LaFerriere*, 546 F.2d 182, 184 (5th Cir. 1977) (trial judge does not credit defendant's story that he did not know that certain payments were unauthorized).

### III.

■ Dean asserts that the government entrapped him into committing the offenses of which he has been convicted. This court has held that "when entrapment is at issue, the focal point of the inquiry is on the predisposition of the defendant." *United States v. Webster*, 649 F.2d 346, 348 (5th Cir. 1981) (en banc). The defendant must initially produce evidence that the government's conduct "created a substantial risk that the offense would be committed by a person other than one ready to commit it." *United States v. Tobias*, 662 F.2d 381, 384 (5th Cir. 1981) (quoting *United States v. Mosley*, 496 F.2d 1012, 1014 (5th Cir. 1974)). If the defendant carries that burden, the government must prove beyond a reasonable doubt that the defendant was predisposed to commit the crime charged. *United States v. Tobias*, 662 F.2d at 384; *United States v. Dickens*, 524 F.2d 441, 444 (5th Cir. 1975), *cert. denied*, 425 U.S. 994, 96 S.Ct. 2208, 48 L.Ed.2d 819 (1976).

■ We conclude that Dean's argument is totally devoid of merit. It would be ludicrous to believe that one who solicits millions of dollars in exchange for promises to appoint narcotics figures to government office and to prosecute selectively competing drug smugglers is predisposed to do anything but deal in drugs. If Dean was entrapped, it was in the web of his own ambition.[7]

### IV.

Appellants raise a number of other arguments, none of which have merit. We conclude, therefore, that this case should be remanded with instructions as set forth in Part I of this opinion.

AFFIRMED IN PART, VACATED IN PART AND REMANDED.

---

7. Dean argues that even if the government's conduct in this case does not constitute entrapment, it was sufficiently outrageous to violate due process principles and to invoke the exercise of this court's supervisory powers to overturn the convictions. *See Hampton v. United States*, 425 U.S. 484, 495 n.7, 96 S.Ct. 1646, 1653 n.7, 48 L.Ed.2d 113 (1976) (Powell, J., concurring); *United States v. Twigg*, 588 F.2d 373, 377–81 (3d Cir. 1978). This court has recently considered the "outer limits" of permissible conduct by the government in pursuing the end of ferreting out crime. *United States v. Tobias*, 662 F.2d 381, 385–387 (5th Cir. 1981). The conduct by the government in this case falls well within those limits. Dean's argument for reversal is therefore totally devoid of merit.