**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Ronald D. LEON and Joe Dee Hicks, Defendants-Appellants.**

**No. 81–1319**
**Summary Calendar.**

United States Court of Appeals, Fifth Circuit.

July 2, 1982.

---

Jay M. Golitz, Dallas, Tex. (Court-appointed), for Leon.

James C. Belt, Jr., Dallas, Tex. (Court-appointed), John Brunetti, Syracuse, N. Y., for Hicks.

John Mitchell Nevins, Asst. U. S. Atty., Dallas, Tex., for United States.

Before BROWN, POLITZ and WILLIAMS, Circuit Judges.

JOHN R. BROWN, Circuit Judge:

Ronald Leon and Joe Hicks appeal from a jury verdict adjudging them guilty of conspiracy to acquire, transport and distribute cocaine, in violation of 21 U.S.C. §§ 846 and 963 [1] and Leon only of using a telephone to commit a conspiracy, in violation of 21 U.S.C. §§ 843(b).[2] Our review of the evi-

---

**1.** Section 846 provides:

Any person who attempts or conspires to commit any offense defined in this subchapter is punishable by imprisonment or fine or both which may not exceed the maximum punishment prescribed for the offense, the commission of which was the object of the attempt or conspiracy.

Section 963 provides:

Any person who attempts or conspires to commit any offense defined in this subchapter is punishable by imprisonment or fine or both which may not exceed the maximum punishment prescribed for the offense, the commission of which was the object of the attempt or conspiracy.

**2.** Section 843(b) provides:

(b) It shall be unlawful for any person knowingly or intentionally to use any communication facility in committing or in causing or facilitating the commission of any act or acts constituting a felony under any provision of this subchapter or subchapter II of this chapter. Each separate use of a communication facility shall be a separate offense under this subsection. For purposes of this subsection, the term "communication facility" means any and all public and private

dence and the record discloses no error, and we affirm both convictions.

### The Texarkana Connection

Joe Hicks was serving a life sentence with little or no chance of parole in the Federal Correctional Institute in Texarkana, Texas (Texarkana) for previous drug and drug-related convictions.[3] There he shared a cell with Erik Russman. In December 1980, Hicks suggested to Russman that the two men, using Mrs. Russman as courier, import cocaine from Bogota, Colombia. Russman listened attentively to the plan and promptly contacted the Drug Enforcement Agency (DEA), believing that it might have some interest in the proposal and calculating that his cooperation might shorten his stint in prison.

Dortha Langley, a Dallas, Texas divorcee who often visited Hicks in prison, also became involved. She was to purchase the cocaine in Bogota and to carry the purchase money. Mrs. Russman, who, unbeknownst to Mrs. Langley, also was assisting the DEA, would actually carry the drugs back to the United States. Mrs. Langley did, in fact, travel once to Bogota to ask Hicks' Colombian connection for a loan to purchase the drugs. The Colombian connection did not pan out, so she turned next to a Dallas man named Cos Bowers. Bowers, an indicted co-conspirator along with Hicks and Leon in this cocaine importing project, advanced $30,000 as a loan and would take a substantial profit from the ultimate sale of the cocaine as "interest".

With the $30,000, Mrs. Langley purchased airline tickets for herself and for Mrs. Russman to fly to Bogota. At the Miami airport, where she was to meet Mrs. Russman, she had the pleasant surprise of a cordial reception from DEA agents, who promptly arrested her and confiscated the money.

Mrs. Langley with alacrity decided to cooperate and implicated Hicks.

A long charade ensued, with DEA tape recording all conversations between Mrs. Langley and Hicks. Spinning quite a tale, she made him believe the trip had been a success. Mrs. Langley then received a call from a man who identified himself as Ron Leon. She told him that Mrs. Russman had arrived in New York with the cocaine and would take the next flight to Dallas. Leon declared that he would fly to Dallas the next day to take delivery.

Continuing the charade with Hicks, Mrs. Langley explained how Mrs. Russman had arrived safely in New York with the cocaine and how she would continue on to Dallas. Hicks told her to take delivery and to pay off Mrs. Russman and to give the cocaine to Leon.

On his arrival in Dallas, Leon called Mrs. Langley. She suggested that they meet at a restaurant near the Dallas-Fort Worth Regional Airport (DFW). Leon said he had a photograph and would recognize her. DEA agents gave Mrs. Langley a shopping bag containing five plastic bags filled with white powder that looked like cocaine. She took the bag to the pre-arranged meeting with Leon and handed it over to him. Leaving the restaurant with his contraband doggie bag, Leon was arrested by DEA agents outside.

Hicks, Leon and Bowers were indicted by a grand jury for conspiring to import and distribute cocaine. Hicks was charged only in Count 1, the conspiracy count, but Leon was charged in Counts 2 and 5 for using a telephone to facilitate the conspiracy. Bowers, who pleaded guilty to one count, was not involved in this trial.

The jury found Hicks and Leon guilty on all counts. Hicks received a fifteen-year sentence to add to the life sentence he was

---

instrumentalities used or useful in the transmission of writing, signs, signals, pictures, or sounds of all kinds and includes mail, telephone, wire, radio, and all other means of communication.

3. Hicks previously had been found guilty of conspiracy to import heroin and cocaine, of a

continuing criminal enterprise with five or more people working for him, and of possession with intent to distribute heroin and cocaine. He received a life sentence on the continuing criminal enterprise count, plus a total of 45 years on other counts, to run concurrently with the life sentence.

serving. Leon received a four-year sentence on each of the three counts, to run concurrently. Both men appeal.

### The Tennessee Waltz

■ On the second day of the three-day trial, counsel for Hicks sought a ten-minute break to locate a witness. The trial court inquired whether the defense had any other witnesses. Following the recess, the court renewed its question. Counsel explained that one witness was flying in from New York but had not yet arrived. The only other witness was the defendant, Hicks. Since the New York witness had not arrived, the court told counsel to put on Hicks.[4] Relying on *Brooks v. Tennessee*, 406 U.S. 605, 92 S.Ct. 1891, 32 L.Ed.2d 358 (1972), Hicks now argues that the trial court's actions amount to reversible error because they restricted counsel's right to decide whether and when Hicks would take the stand. We do not agree. In *Brooks*, a Tennessee statute required a defendant to testify first or not at all. The Supreme Court held that the statute violated due process by restricting an accused's defense and by depriving him of "the guiding hand of counsel", 406 U.S. at 612, 92 S.Ct. at 1895, 32 L.Ed.2d at 364, *quoting Powell v. Alabama*, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed.

158 (1932). *Brooks* does not control here. The judge was merely trying to keep the trial from stalling in mid-afternoon. The record shows that counsel and Hicks already had discussed the matter, and Hicks had decided to testify. Thus the Court's actions did not influence the decision to testify. Given the substantial latitude a federal judge possesses in conducting a trial, *see U. S. v. Bartlett*, 633 F.2d 1184, 1188 (5th Cir.), *cert. denied*, 454 U.S. 820, 102 S.Ct. 101, 70 L.Ed.2d 91 (1981); *Moore v. U. S.*, 598 F.2d 439, 443 (5th Cir. 1979), we hold that the trial judge did not infringe Hicks' constitutional rights by telling defense counsel to put him on the stand in that order.

### Entrapment?

The Court denied Hicks' request for an instruction on the issue of entrapment. Hicks now maintains that this failure constitutes reversible error.

■ In this Circuit, before the judge must instruct the jury on entrapment, a defendant must show (1) lack of predisposition to commit the crime *and* (2) some governmental involvement and inducement more than just providing the opportunity or facilities to commit the crime. *See U. S. v. Andrew*, 666 F.2d 915, 922 (5th Cir. 1982);

---

4. THE COURT: Do you have any more witnesses?

MR. BELT: Yes, ma'am, we have the one witness I just called, Mr. Laughlin, who obviously hasn't shown yet.

THE COURT: He hasn't shown yet?

MR. BELT: We have one other witness, Mr. Brunetti, who is flying in from New York and won't be in until late tonight, so at this time we will request the Court to give us a recess until in the morning.

THE COURT: Well, what are you going to do about this witness that hasn't shown up?

MR. BELT: Well, if he doesn't show—he was a *voluntary witness, Your Honor,* to testify to.

THE COURT: And if he doesn't show up you just won't have him?

MR. BELT: I just won't call him, no, ma'am, I won't call him.

THE COURT: Now if he doesn't show up today you won't call him?

MR. BELT: No, if he doesn't show up today we just won't call him.

THE COURT: All right. And you have no other witness?

MR. BELT: Well, I'm saying that we have a Mr. Brunetti who is going to be in tonight. We will have him testify tomorrow.

THE COURT: Yes, I understand that. I want to know if you have any other witness.

MR. BELT: Yes, ma'am, I think we're going —yes, ma'am, we're going to have one other witness. The Defendant is going to testify.

THE COURT: Call him.

MR. BELT: We would request, Your Honor, at this time that we still have a recess until in the morning because—

THE COURT: No, I'm not going to give a recess until in the morning. If you're going to put on any *other witness* other than the one from New York, put him on now.

MR. BELT: Well, we will, Your Honor, if that's what the Court orders us to do.

THE COURT: That's what the Court is ordering.

MR. BELT: At this time we call Mr. Joe Dee Hicks.

THE COURT: All right, Mr. Hicks, come around.

U. S. v. Webster, 606 F.2d 581, 583 (5th Cir. 1979); U. S. v. Felts, 497 F.2d 80, 81 (5th Cir.), cert. denied, 419 U.S. 1051, 95 S.Ct. 628, 42 L.Ed.2d 646 (1974). Hicks has entirely failed to meet his burden.[5] The evidence establishes that Hicks recruited Russman to the scheme; he was abundantly predisposed to commit the crime. Hicks has not shown any governmental inducement. His vague assertions that Russman, working for the DEA, had induced him to cooperate do not suffice, since Russman did not assist DEA until well after Hicks solicited his assistance. Since Hicks failed to show either a lack of predisposition or governmental involvement, the trial court correctly denied the requested entrapment instruction.

### Duplicitous Indictment that Repeated Itself Redundantly

■ Hicks contends that Count 1 of the indictment was duplicitous. The indictment charged a conspiracy to import controlled substances, 21 U.S.C. § 846, and a conspiracy to distribute those substances, 21 U.S.C. § 963. F.R.Crim.P. 12(b)(2) states that objections based on defects in the indictment must be raised prior to trial, or they are waived. See U. S. v. Bradsby, 628 F.2d 901, 905–06 (5th Cir. 1980), citing U. S. v. Busard, 524 F.2d 72, 73 (5th Cir. 1975), cert. denied sub nom. Meyer v. U. S., 426 U.S. 948, 96 S.Ct. 3168, 49 L.Ed.2d 1185 (1976). Hicks' reference to U. S. v. Murray, 618 F.2d 892 (2d Cir. 1980), is not controlling in the face of binding Fifth Circuit precedent.

### It's A Long Way from Texarkana . . .

■ Next, Hicks complains that the trial court erred in not granting an application for writ of habeas corpus ad testificandum to produce two Texarkana inmates to testify in his defense. That decision falls within the realm of the District Court's sound discretion. See Ballard v. Spradley, 557 F.2d 476, 480 (5th Cir. 1977); Malinauskas v. U. S., 505 F.2d 649, 655–56 (5th Cir. 1974). Where, as here, the parties entered into a stipulation, which the jury heard, which conveyed the substance of the testimony that at least one of the witnesses would have given, the trial court did not abuse its discretion.

### The Next Best Thing to Being There

Leon contests the admission into evidence of tape recordings of telephone conversations between himself and Mrs. Langley. Mrs. Langley received two calls from a man whom she did not know who identified himself as Ron Leon. The first time, he told her he would arrive in Dallas the next day to pick up the cocaine. She received another call from the same person and arranged a meeting to transfer the drugs.

■ While mere identification by a caller over the telephone does not authenticate the conversation, see U. S. v. Pool, 660 F.2d 547, 560 (5th Cir. 1981) ("A telephone call out of the blue from one who identifies himself as X may not be, in itself, sufficient authentication of the call as in fact coming from X"), quoting U. S. v. Register, 496 F.2d 1072, 1077 (5th Cir. 1974), cert. denied sub nom. Cochran v. U. S., 419 U.S. 1120, 95 S.Ct. 802, 42 L.Ed.2d 819 (1975), this call was not "out of the blue". Mrs. Langley expected a call from Leon regarding the delivery of the cocaine. The caller gave a description of himself, arranged a meeting place and told Mrs. Langley that for ease of identification he had a picture of her. Mrs. Langley subsequently met a man who fit the description at the restaurant. He

---

5. The amount of evidence necessary to satisfy this burden is unclear. Two schools of thought presently coexist in this Circuit. The first would hold that any amount of evidence, even though insubstantial, gets the issue to the jury. See Strauss v. U. S., 376 F.2d 416 (5th Cir. 1967); Perez v. U. S., 297 F.2d 12 (5th Cir. 1961). The opposing view takes the position that in order to satisfy the burden, a defendant must produce substantial evidence, i.e., more than a smattering or the proverbial scintilla. See Pierce v. U. S., 414 F.2d 163 (5th Cir.), cert. denied, 396 U.S. 960, 90 S.Ct. 435, 24 L.Ed.2d 425 (1969). For a very thorough discussion of the two opposing camps, see Andrew, supra at 923 n. 10, 11. As we find that Hicks produced no evidence at all to show entrapment, we need not declare our colors for or against either of these two Fifth Circuit teams.

showed her the picture, one that she had sent to Hicks in Texarkana. Identification completed, he took the shopping bag with the imitation cocaine and, when arrested outside, proved to be Ron Leon. We find the circumstantial evidence more than sufficient to support the jury's conclusion that Leon was, in fact, the caller. Unlike *Pool*, there is little if any chance that the caller was a man "out of the blue".

### Have a coke and a smile

Leon now attacks the sufficiency of the evidence linking him to the cocaine importation and distribution conspiracy. He did not move for a judgment of acquittal at the close of the evidence. As we have held, "When a defendant fails to renew his motion for acquittal at the end of all the evidence, the sufficiency of the evidence is not reviewable on appeal, absent a manifest miscarriage of justice." *U. S. v. Doe*, 664 F.2d 546, 548 (5th Cir. 1981). The standard we employ is whether, "taking the view most favorable to the government, a reasonably minded jury must necessarily have a reasonable doubt as to a defendant's guilt." *U. S. v. Davis*, 666 F.2d 195, 201 (5th Cir. 1982). In applying this standard, "all reasonable inferences and credibility choices must be made in favor of the jury verdict, and that verdict must be sustained if there is substantial evidence to support it when the facts are viewed in the light most favorable to the government." *Id., citing Glasser v. U. S.*, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942); *U. S. v. Cardona*, 650 F.2d 54, 57 (5th Cir. 1981).

▆ In a conspiracy case, the government must prove beyond a reasonable doubt that two or more persons agreed to commit a crime and that each conspirator knew of, intended to join and participated in the conspiracy. *U. S. v. Glasgow*, 658 F.2d 1036, 1040 (5th Cir. 1981); *Davis, supra; U. S. v. Malatesta*, 590 F.2d 1379, 1381 (5th Cir.) (en banc), *cert. denied sub nom. Bartolotti v. U. S.*, 440 U.S. 962, 99 S.Ct. 1508, 59 L.Ed.2d 777 (1979). Under a § 846 conspiracy the government need not show that Leon committed an overt act in furtherance of the conspiracy, *U. S. v. Dean*, 666 F.2d 174, 178 (5th Cir. 1982); *U. S. v. Rodriguez*, 612 F.2d 906, 919–20 (5th Cir. 1980) (en banc), *aff'd. sub nom., Albernaz v. U. S.*, 450 U.S. 333, 101 S.Ct. 1137, 67 L.Ed.2d 275 (1981), since the jury may infer participation in the conspiracy from a "development and a collection of circumstances," *U. S. v. Thevis*, 665 F.2d 616, 648 (5th Cir. 1982), *quoting Glasser, supra*. The jury could easily infer from Leon's acts an agreement to participate in the conspiracy, even though he did not enlist until well after its inception. *See U. S. v. Robertson*, 659 F.2d 652, 656 (5th Cir. 1981).

▆ The trial court admitted recordings of various conversations between Hicks and Mrs. Langley, subject to being connected up with Leon later. F.R.Evid. 801(d)(2)(E) provides that statements made by a co-conspirator during the course and in furtherance of the conspiracy are not hearsay. Before rule 801 comes into play, however, the trial court must determine, based on substantial, independent evidence, that a conspiracy existed and that the declarant and defendant were members. *U. S. v. Miller*, 664 F.2d 94, 98 (5th Cir. 1981), *citing U. S. v. James*, 590 F.2d 575, 578–81 (5th Cir.) (en banc), *cert. denied*, 442 U.S. 917, 99 S.Ct. 2836, 61 L.Ed.2d 283 (1979).

After the presentation of all the evidence, the judge found, by "a preponderance of the evidence independent of the statement itself," *James*, 590 F.2d at 582, that a conspiracy existed and that Leon and Hicks were members. Under *Dean, supra, citing U. S. v. Perry*, 624 F.2d 29, 30–31 (5th Cir. 1980), our standard of review is the "clearly erroneous yardstick". 624 F.2d at 30 (Politz, J.).

The taped conversations between Mrs. Langley and Leon show that Leon was keenly aware of the scheme to import and distribute cocaine. He knew of Mrs. Langley's part in the delivery. He had received instructions to pick up the drugs from her and to make arrangements for payment. When Leon arrived at the restaurant for the rendezvous, he had on hand a picture of Mrs. Langley and a plane ticket from Cali-

fornia to Dallas, which linked him to Hicks' "West Coast connection". This evidence supports the trial judge's finding of a substantial link between Leon and the conspiracy.

### Accounting for the Missing Count

▮▮▮ Leon finally contends that he could not be found guilty on Count 5 of the indictment since the judge failed to charge the jury as to that count. While Leon failed to raise this point with the trial court, F.R.Crim.P. 52(b) brings this manifestly "plain error" within our judicial grasp. In the interests of the administration of justice, we agree that the conviction on Count 5 cannot stand. While we have uncovered no case on point, we believe, by analogy to *Stirone v. U. S.*, 361 U.S. 212, 217, 80 S.Ct. 270, 273, 4 L.Ed.2d 252, 256 (1960), and its progeny,[6] which forbid judicial amendment of a Grand Jury indictment, that conviction on an unidentified count exposes a defendant to similar risks. "[I]t cannot be said with certainty" that Leon "was convicted solely on the charge made in the indictment the grand jury returned." *Stirone*, 361 U.S. at 217, 80 S.Ct. at 273, 4 L.Ed.2d at 257. A judge must instruct the jury on all aspects of a case in order for them to reach a fair and proper verdict. When the judge omits a count, as here, we simply cannot know the basis for the jury's decision. We therefore reverse the conviction on Count 5 and remand for a new trial on that count alone. As to all other points, the judgment is affirmed.

AFFIRMED in part, REVERSED in part and REMANDED.

---

6. *See U. S. v. Irwin*, 661 F.2d 1063 (5th Cir. 1981), *cert. denied*, —— U.S. ——, 102 S.Ct. 1754, 72 L.Ed.2d 164 (1982); *U. S. v. Bullock*, 615 F.2d 1082 (5th Cir.), *cert. denied*, 449 U.S. 957, 101 S.Ct. 367, 66 L.Ed.2d 223 (1980); *U. S. v. Salinas*, 601 F.2d 1279 (5th Cir. 1979); *U. S. v. Carroll*, 582 F.2d 942 (5th Cir. 1978); *U. S. v. Fischetti*, 450 F.2d 34 (5th Cir. 1971), *cert. denied*, 405 U.S. 1016, 92 S.Ct. 1290, 31 L.Ed.2d 478 (1972).