TALLMAN, Circuit Judge,
concurring in part and dissenting in part:
With the utmost respect for the views of my two colleagues, I find myself at odds with portions of both opinions. I concur in all but Sections TV.A and V.D of Judge O’Scannlain’s opinion and would remand solely for resentencing as explained in Section VI. I respectfully dissent from that part of his opinion which declares that Hawaii has waived its challenge to the district court’s grant of habeas relief on Loher’s ineffective assistance of appellate counsel (IAAC) claim and suggesting that the district court order a new direct appeal to reconsider the Brooks and IAAC claims already decided against Loher by the Hawaiian appellate courts. I also disagree with Judge Smith’s conclusion that the state court’s construction of Brooks v. Tennessee, 406 U.S. 605, 92 S.Ct. 1891, 32 L.Ed.2d 358 (1972), was objectively unreasonable under 28 U.S.C. § 2254(d).
I
Judge Smith’s opinion does not afford sufficient AEDPA deference to the factual findings of the Hawaii courts following an evidentiary hearing on state collateral review. See 28 U.S.C. § 2254(d). Those courts expressly found that Loher’s trial counsel created the mid-trial hiatus by failing to confer with opposing counsel as to how many witnesses the State intended to actually call. That factual finding is entitled to a presumption of correctness, which Loher has not rebutted by “clear and convincing evidence.” 28 U.S.C. § 2254(e)(1). The findings included that when the State rested early on the first day, the defense was unprepared to call any of its witnesses except for the defendant, who had intend *1124 ed to testify all along. Simply because Judge Smith would have found otherwise is not good enough. See Wood v. Allen, 558 U.S. 290, 301, 130 S.Ct. 841, 175 L.Ed.2d 738 (2010) (“[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance.”); Schriro v. Landrigan, 550 U.S. 465, 473, 127 S.Ct. 1933, 167 L.Ed.2d 836 (2007) (“The question under AEDPA is not whether a federal court believes the state court’s determination was incorrect but whether that determination was unreasonable — a substantially higher threshold.”).
In my trial experience, it is not unusual to list far more witnesses than counsel will actually need to put on during the case in chief. That avoids a ruling barring them from testifying because they were not listed in advance. It is the responsibility of counsel to confer on timing issues and to be ready to fill gaps in the trial day to avoid exactly what happened here — inexcusably running out of witnesses. The language of the Supreme Court opinions, and Federal Rule of Evidence 611,[1] recognize the key role and responsibility of the trial judge to keep the trial moving. See Morris v. Slappy, 461 U.S. 1, 11, 103 S.Ct. 1610, 75 L.Ed.2d 610 (1983) (“Trial judges necessarily require a great deal of latitude in scheduling trials.”); Geders v. United States, 425 U.S. 80, 86, 96 S.Ct. 1330, 47 L.Ed.2d 592 (1976) (“The judge is not a mere moderator, but is the governor of the trial for the purpose of assuring its proper conduct and of determining questions of law.”) (citations omitted). This is especially important in congested urban trial courts, like those in Honolulu, that must daily address heavy trial caseloads so that all defendants can be heard. On this record, the Hawaiian courts were not objectively unreasonable in ruling that there was no Brooks error.
II
I disagree with Section IV.A of Judge O’Scannlain’s opinion because I believe we should exercise our discretion to consider whether Loher is entitled to habeas relief on his IAAC claim. Hawaii’s failure to address this issue separately and distinctly on appeal has unnecessarily complicated this case. While we ordinarily address “only issues which are argued specifically and distinctly in a party’s opening brief,” Chadd v. United States, 794 F.3d 1104, 1109 n. 4 (9th Cir. 2015) (quoting Greenwood v. FAA, 28 F.3d 971, 977 (9th Cir. 1994)), this is not always the case. We have held that “the waiver rule is not one of jurisdiction, but discretion.” United States v. Northrop Corp., 59 F.3d 953, 957 n. 2 (9th Cir. 1995) (citing Singleton v. Wulff, 428 U.S. 106, 121, 96 S.Ct. 2868, 49 L.Ed.2d 826 (1976)).
I would exercise that discretion here, considering the “record relevant to the matter is fully developed” and the district court considered the IAAC claim below. See id. We should find that Loher is not entitled to habeas relief on his IAAC claim, which is intertwined with the merits of his invalid Brooks claim.
As Judge O’Scannlain’s opinion acknowledges, the inquiry as to whether Loher is entitled to habeas relief on his IAAC claim depends on whether the Hawaii state court’s decision in Loher IV was contrary *1125 to, or involved an unreasonable application of, Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). DFO Op. at 1120-21; see Smith v. Robbins, 528 U.S. 259, 285, 120 S.Ct. 746, 145 L.Ed.2d 756 (2000). Under Strickland's two-part test, Loher had to show both that his appellate counsel’s representation fell below an objective standard of reasonableness for failing to raise the Brooks issue and that there is “a reasonable probability that, but for his counsel’s unreasonable failure to file a merits brief, he would have prevailed on his appeal.” Smith, 528 U.S. at 285, 120 S.Ct. 746 (citing Strickland, 466 U.S. at 694, 104 S.Ct. 2052). “The likelihood of a different result must be substantial, not just conceivable.” Harrington v. Richter, 562 U.S. 86, 112, 131 S.Ct. 770, 178 L.Ed.2d 624 (2011). We may consider either Strickland prong, and need not address both if Loher fails one. Strickland, 466 U.S. at 697, 104 S.Ct. 2052.
Here, Loher cannot meet the prejudice prong — as Hawaii’s Intermediate Court of Appeal reasonably recognized. In rejecting Loher’s IAAC claim, the state court held:
[Appellate counsel’s] omission of the [Brooks] issue did not result in the “withdrawal or impairment of a potentially meritorious defense.” The Circuit Court did not err in concluding that [appellate counsel’s] omission of the “forced testimony” issue did not amount - to ineffective assistance of appellate counsel.
Loher v. State, No. 29181, 2011 WL 2132828, at *10 (Haw. Ct. App. May 31, 2011) (citation omitted).
We have ruled that under AEDPA, it was not objectively unreasonable to find Loher’s Brooks claim meritless. DFO Op. at 1113-19. How then can it be ineffective of Loher’s appellate lawyer to have failed to raise this claim? It cannot. Accordingly, the Hawaii ICA reasonably found, in Lo-her IV, that Loher had not shown he was prejudiced by appellate counsel’s omission of the Brooks claim (the second prong of the two-part Strickland test). See Loher IV, 2011 WL 2132828, at *10 (appellate counsel’s omission of the Brooks issue “did not result in the withdrawal or impairment of a potentially meritorious defense”).
Because this finding was not contrary to, or an unreasonable application of, Strickland, Loher is not entitled to habeas relief on his IAAC claim.
Ill
Asking the state court to revisit an issue it already decided is senseless. Accordingly, I dissent from Section Y.D of Judge O’Scannlain’s opinion that remands to the district court by citing to cases suggesting a new direct appeal be ordered as an additional condition required to remedy the ineffective assistance of Loher’s appellate counsel. DFO Op. at 1122-23. Federal habeas law does not require a “do over” when we already know the result will be the same as previously pronounced by the state courts. See Brecht v. Abrahamson, 507 U.S. 619, 637, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993) (federal habeas petitioners are not entitled to habeas relief unless the alleged violation had a “substantial and injurious effect or influence in determining the jury’s verdict”).
While the district court, on remand, has discretion to consider the appropriate remedy, I strongly disagree with any suggestion that Loher might be entitled to a new direct appeal on an issue that the state courts have already decided. The Hawaii state courts have previously expended substantial judicial resources, that included an evidentiary hearing, deciding adverse to Loher the merits of the Brooks and IAAC issues. Granting Loher a new direct appeal — on an issue that lacks merit — would be a windfall.
*1126 A new direct appeal under Judge O’Scannlain’s view would also apparently require the Hawaii state courts to disregard all of the important evidence that was adduced in the state evidentiary hearing on the Brooks issue. See DFO Op. at 1123 n. 14. We should not, under the guise of doing what is “equitable,” turn back the hands of time and deprive the state court of important evidence obtained from the evidentiary hearing that was conducted for the exact purpose of determining whether the Brooks claim was “potentially meritorious.” See Strickland, 466 U.S. at 689, 104 S.Ct. 2052 (every effort must be made to “reconstruct the circumstances of counsel’s challenged conduct”). That hearing conclusively showed it was not.
This is not a game. Habeas corpus exists to remedy “extreme malfunctions in the state criminal justice systems.” Harrington, 562 U.S. at 102, 131 S.Ct. 770 (citation omitted). The full record in this case certainly does not present one.
In my view, the appropriate remedy is to leave the conviction intact and simply remand for re-sentencing on the Apprendi claim — which I agree has been waived for all of the reasons stated in Section TV.B of Judge O’Scannlain’s opinion. On remand, I would urge the district court to avoid imposing any remedy that would “squander the considerable resources the State properly invested” in determining whether the Brooks and IAAC claims were meritorious. Lafler v. Cooper, — U.S.-, 132 S.Ct. 1376, 1388-89, 182 L.Ed.2d 398 (2012). Lo-her, a recidivist sex-offender, should not get a second-bite to challenge his conviction.
M. SMITH, Circuit Judge, concurring in part and dissenting in part:
I concur in the majority’s holding that the government has waived its challenges to Loher’s ineffective assistance of counsel (IAC) and Apprendi claims, as well as in the majority’s proposed remedy for those violations, as discussed in Section V of the opinion. I respectfully disagree, however, with the majority’s rejection of Loher’s claims under Brooks v. Tennessee, 406 U.S. 605, 92 S.Ct. 1891, 32 L.Ed.2d 358 (1972). I would hold instead that the state court’s denial of relief was “contrary to, or an unreasonable application” of the Supreme Court’s holding in Brooks, within the meaning of 28 U.S.C. § 2254(d)(1).[1]
I. Brooks controls the outcome of Loher’s case.
Brooks struck down a state rule that criminal defendants must testify first — before all other defense witnesses — or forfeit the right to testify at all. 406 U.S. at 605, 92 S.Ct. 1891. Brooks’s holding rested on two bases: first, that this procedural rule unlawfully curtailed a defendant’s right to remain silent, and second, that it deprived a defendant of counsel’s guidance in deciding “whether and when” to testify, in violation of due process. Id. at 612-13, 92 S.Ct. 1891. As the Court highlighted, this Hob-son’s choice “casts a heavy burden on a defendant’s otherwise unconditional right not to take the stand.” Id. at 610-11, 92 S.Ct. 1891 (emphasis added). The Court further explained that this rule unlawfully deprived the defendant of the strategic hand of counsel in the timing of his testimony, a “critical element of his defense.” Id. at 612-13, 92 S.Ct. 1891.
*1127 Brooks set forth a robust rule of constitutional law. In reaching its conclusion, the Brooks Court considered Tennessee’s countervailing interest in “preventing testimonial influence,” but held that this state concern did not override a defendant’s Fifth and Fourteenth Amendment rights. Id. at 611-12, 92 S.Ct. 1891. Rather, Brooks held that a criminal defendant’s rights are violated when a trial judge restricts “whether, and when in the course of presenting his defense, the accused should take the stand.” Id. at 613, 92 S.Ct. 1891. Such was the choice that the trial judge presented to Loher’s counsel. (“Is your client going to testify or is he going to waive his right to testify?”). These facts fall squarely within the scope of Brooks.
In support of its conclusion that Brooks does not control, the majority relies on cases where other courts have cited a trial judge’s authority over the “order of proof’ to justify occasions when a defendant was compelled to testify. 406 U.S. at 613, 92 S.Ct. 1891. Indeed, the Brooks Court agreed that its holding did not “otherwise” disturb a trial judge’s “ordinary power” over the order of proof. Id. Yet the core of the constitutional disturbance remains when, as here, a trial-judge unjustifiably compels a defendant to testify first or not at all. Nothing in the reasoning of Brooks turns on whether the trial judge’s ultimatum was “extemporaneous,” or occurred in the middle of trial. Indeed, Brooks involved far more compelling, and admittedly legitimate, state concerns in preventing testimonial influence, which failed to outweigh a defendant’s rights under the Fifth and Fourteenth Amendments. Id. at 611-12, 92 S.Ct. 1891. In contrast, the trial judge summarily concluded that an efficiency interest in the remaining two hours’ worth of time trumped Loher’s constitutional rights. This trade-off was grossly disproportionate. To conclude otherwise would be to eviscerate one of the central concerns of Brooks — to preserve a defendant’s “unconditional right not to take the stand.” Id. at 610, 92 S.Ct. 1891.
The majority ultimately relies on whether fairminded jurists could disagree over “where to draw the line between the' trial court’s authority and the constitutional rights recognized in Brooks.” Such an approach has some appeal. Yet the fact that the Brooks Court framed its holding as a general principle of constitutional law does not indirectly weakeh its force by suggesting that its application to Loher’s particular circumstances was objectively reasonable. As the Court has clarified, “AEDPA does not require state and federal courts to wait for some nearly identical factual pattern before a legal rule must be applied .... The statute recognizes, to the contrary, that even a general standard may be applied in an unreasonable manner.” Panetti v. Quarterman, 561 U.S. 930, 953, 127 S.Ct. 2842, 168 L.Ed.2d 662 (2007) (internal quotation marks and citation omitted). Nor does the “fairminded jurist” inquiry boil down to a matter of nose-counting the decisions of other courts in other cases. See Crace v. Herzog, 798 F.3d 840, 848 n. 3 (9th Cir. 2015).
Even so, the cases cited by the majority are materially distinguishable from Brooks. and the case at hand. They illustrate only the general proposition that the outer bounds of a trial judge’s discretion may vary from case to case — not that the line was unclear in the case before us, where the trial court abrogated Loher’s constitutional rights to preserve a mere two hours of trial time.
For example, the majority relies on the Second Circuit’s decision in Harris v. Barkley, 202 F.3d 169 (2d Cir. 2000), where the trial court compelled a criminal defendant to testify before his last witness. Unlike the facts in the case at hand, the defendant in Harris flouted the trial court’s instructions by failing to subpoena *1128 a witness to appear on the specific date that the trial court had pre-determined. Id. at 174.[2]
Menendez v. Terhune, 422 F.3d 1012, 1031 (9th Cir. 2005), is likewise inapropos because that case decided the limited issue of whether a trial court could enforce the rules of evidence by requiring a defendant to first lay the foundation for the testimony of other witnesses, when the defendant was the sole witness who could do so. In no way did the state court in Menendez mandate that the defendant testify first or forfeit the right to testify at all — it simply mandated that the defendant testify first if he desired to introduce testimony from those witnesses in order to comply with longstanding evidentiary rules. See id.
Therefore, the facts of these cases are far afield of Brooks, and of the instant case. They might permit reasonable jurists to disagree about facts that lie at the periphery of the Brooks rule. But this case lies at its core. The state court’s reasoning was thus contrary to, or an unreasonable application of, Brooks.
II. The state court’s analysis of the Kido exceptions to Brooks was contrary to, or an unreasonable application of, Brooks.
The state court in this case rested its analysis on certain putative exceptions to Brooks that were enunciated by the Hawaii Court of Appeals in State v. Kido, 102 Hawai’i 369, 76 P.3d 612, 619 (Haw. Ct. App. 2003). The state court found that the Kido exceptions applied because (1) Lo-her’s decision to testify “congealed” prior to the trial court’s actions and (2) Loher created the “exigency” that compelled him to testify first. Loher v. Hawaii, No. 29-818, 2011 WL 2132828 (Haw. Ct. App. 2011) (“Loher IV”), *8-*9. In adopting the Kido exceptions, the state court unreasonably strayed from Brooks’s holding.
A. Whether Loher’s intent to testify had “congealed”
The first Kido exception, involves a factual inquiry into whether a defendant’s decision to testify had “congealed” prior to the trial court’s action. 76 P.3d at 619. Yet Brooks emphasized that a defendant “cannot be absolutely certain that his witnesses will testify as expected or that they will be effective on the stand.” 406 U.S. at 609, 92 S.Ct. 1891. Rather, a defendant is constitutionally entitled to wait “until [his testimony’s] value can be realistically assessed.” Id. at 610, 92 S.Ct. 1891. Prior to the trial court’s ruling, Loher made no definitive statement that he would waive his right to remain silent by taking the stand and exposing himself to cross-examination. Loher v. Thomas, 23 F.Supp.3d 1182, 1198 (D. Haw. 2014).[3] The district court quoted *1129 then-Circuit Judge Anthony Kennedy as follows:
At the outset of a trial, a defendant in good faith may intend to testify, but it may be quite reasonable for him to change his mind after considering the course taken by the evidence.... Thus, a defendant cannot be bound by any pretrial statement of election; in fact, it would appear to be unconstitutional to do so. See Brooks v. Tennessee, supra. There is absolutely nothing to guarantee the sincerity of such pretrial assurances, and even when statements of election are given in good faith, they may be based on fictional assumptions.
Id. at 1199 (quoting United States v. Cook, 608 F.2d 1175, 1189 (9th Cir. 1979) (Kennedy, J., dissenting in part and concurring in part)). For these reasons, Brooks discouraged close probing of whether a defendant intended to testify — instead, it allowed a defendant the right to decide, or change his mind, after viewing the strength of his case. See 406 U.S. at 609-10, 92 S.Ct. 1891.
Equally improper is the fact that the exception fails to consider the entirety of the Court’s opinion in Brooks. Brooks did not limit itself to the question of whether a defendant was compelled to testify, in violation of his Fifth Amendment rights. It also rested its holding on a defendant’s choice of when to testify, based on the Fourteenth Amendment’s guarantee of due process. Id. at 612-18, 92 S.Ct. 1891. Brooks therefore concerned two distinct constitutional rights. Yet the exception enunciated in Kido places a myopic focus on one half of the Court’s holding by providing that whenever a defendant has already decided to testify, both his Fifth and Fourteenth Amendment rights are forfeited.
Here, Loher was harmed not only by being compelled to testify, but being compelled to do so first. See id. Brooks held that compelling a defendant to testify first interferes with his right to counsel in the planning of his defense — at a time when a defendant and his counsel are “without an opportunity to evaluate the actual worth of their evidence,” and when “as a matter of professional judgment his lawyer may want to call him later in the trial.” Id. at 612, 92 S.Ct. 1891. By casting aside this part of the Court’s constitutional holding, the exception is objectively unreasonable and, indeed, contrary to Brooks itself.
Finally, this exception sidesteps the appellate-review process set forth in cases such as Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), and Arizona v. Fulminante, 499 U.S. 279, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991), for evaluating whether claims of trial error are harmful. The Hawaii courts’ post-hoc factual inquiry into when a defendant’s decision to testify had “congealed” is independent of whether a Brooks violation existed in the first place. Rather, the exception asks whether the trial court’s decision materially changed the outcome — that is, assuming there was constitutional error, whether such error was harmless. The Hawaii courts’ inquiry therefore places the cart before the horse by conflating harmlessness with underlying constitutional error. In effect, it assumes that when a trial error is deemed “harmless,” there can be no violation of the constitutional scheme envisioned by Brooks. Worse yet, it does so by omitting a significant threshold question: whether a harmless-error or a structural-error analysis is more appropriate.
Under structural-error analysis, legal error is per se harmful. See United States v. Sanchez-Cervantes, 282 F.3d 664, 670 (9th Cir. 2002) (citing Arizona, 499 U.S. at 309-10, 111 S.Ct. 1246). As the district court concluded, a Brooks error is likely structural and not amenable to harmlessness analysis. Loher v. Thomas, 23 F.Supp.3d at 1196-97; see Bell v. Cone, *1130 535 U.S. 685, 695-96 & n. 3, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002) (citing Brooks). Therefore, the choice between structural error and harmless error is a non-trivial one. By shortcircuiting the constitutional analysis under Chapman and its progency, the Hawaii court’s exception serves to erode the standard of review in a way that materially, and invidiously, alters a reviewing court’s conclusions.
B. Creation of the exigency
The state court also based its holding on a second Kido exception: whether a defendant is to blame for causing the “exigency” that compelled the premature testimony. Loher IV, at *7. This exception, too, does not square with established precedent that a criminal defendant’s waiver of fundamental constitutional rights must generally be knowing and intelligent. See Iowa v. Tovar, 541 U.S. 77, 80, 124 S.Ct. 1379, 158 L.Ed.2d 209 (2004). Rather, the exception unreasonably compels a defendant to forfeit his Fifth and Fourteenth Amendment rights under Brooks, even where that situation arose as a mere mishap or “mistake,” id. at *10.
The majority relies on the assumption that Loher was “primarily responsible” for the absence of his witnesses. Even assuming the trial court was not unreasonable in imposing an affirmative duty on defense counsel in this situation, counsel’s failure to exercise this duty, standing alone, does not compel the waiver of the defendant’s constitutional rights under Brooks. Such a conclusion, even in pursuit of a valid interest in efficiency, would be dissonant with the very balancing conducted by the Brooks Court, where even a state’s substantive interest in preventing testimonial gamesmanship did not outweigh a defendant’s Fifth and Fourteenth Amendment rights. 406 U.S. at 611-12, 92 S.Ct. 1891.
Moreover, the Supreme Court has long maintained that a criminal defendant waives his constitutional rights only in the case of “intentional relinquishment or abandonment.” United States v. Olano, 507 U.S. 725, 733, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993) (quoting Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938)). ‘"Waiver of the right to counsel, as of .constitutional rights in the criminal process generally, must be a “knowing, intelligent ac[t] done with sufficient awareness of the relevant circumstances.” Iowa, 541 U.S. at 80, 124 S.Ct. 1379 (quoting Brady v. United States, 397 U.S. 742, 748, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970)); see also Zerbst, 304 U.S. at 464, 58 S.Ct. 1019 (holding that courts should not “presume acquiescence in the loss of fundamental , rights”). The majority cites cases from other circuits in which defendants apparently waived their rights under Brooks through affirmative misconduct or failure to fulfill a court-imposed duty — for example, to secure the presence of witnesses on a date set by the court. See, e.g., Harris, 202 F.3d at 174. Loher’s case presents a far cry from such circumstances. Rather, the state court found that the Loher had waived the Fifth and Fourteenth Amendment rights announced in Brooks by no more than pure inadvertence.
III. Legal error under § 2554(d)(1)
The Hawaii courts, as a matter of law, misconstrued the scope of Brooks and improperly curtailed its holding through the creation of several freewheeling exceptions set forth in Kido. The Kido exceptions embody flawed constitutional standards. Most dangerously, they operate to withhold cases from Brooks scrutiny entirely once it is determined that an over-expansive exception is triggered. Because the state court applied the wrong legal standard to Loher’s constitutional claims, AEDPA deference to its conclusions is unwarranted. See Cooperwood v. Cambra, 245 F.3d 1042, 1046 (9th Cir. 2001); Wade *1131 v. Terhune, 202 F.3d 1190, 1195 (9th Cir. 2000). Accordingly, I would hold that the state court’s construction of Brooks is objectively unreasonable under 28 U.S.C. § 2554(d)(1), and must be reversed.
I respectfully dissent.

. Federal Rule of Evidence 611 instructs courts to: "exercise reasonable control over the mode and order of examining witnesses and presenting evidence” in order to "avoid wasting time." The trial judge cited to the Hawaiian equivalent of the federal rule in refusing to adjourn two hours early: Jurors do not like to come in for half a day and then be told to go home. It is inconsiderate of their valuable time and a waste of precious courtroom space and limited judicial officer time as well.

. Despite some difficulty accepting the bona fides of factfinding conducted a decade after the relevant events, I will assume that the facts found by the state court are true. Therefore, my view does not rely on a conclusion that its assessment of the evidence was "unreasonable” under 28 U.S.C. § 2254(d)(2). Rather, I find legal error in the manner in which the state court construed the holding of Brooks, such that its construction was contrary to, or an objectively unreasonable application of, established law.

. Similarly, in United States v. Leon, 679 F.2d 534, 538 (5th Cir. 1982), the Fifth Circuit addressed a situation where defense counsel was unable to secure the appearance at trial of a voluntary witness. Leon’s analysis of this issue is scant, but it appears to rest its holding on the assumption that the defendant had already decided to testify and that the witness was merely a voluntary one. In addition, Leon's reasoning commits the same legal error discussed below, infra Section II.A. That is, a determination that the trial court's ruling is harmless cannot factor into whether the ruling itself violated Brooks. In parsing claims of trial error, we look to whether an error of constitutional magnitude occurred. Then, we examine whether such error is susceptible to harmless-error analysis. See Arizona v. Fulminante, 499 U.S. 279, 308, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991).

. Even if the state court’s post-hoc inquiry into whether Loher had intended to testify all along was in accordance with Brooks, Loher was not required to take the stand to establish an alibi defense under Hawaiian law. See Loher, 23 F.Supp.3d at 1198 (citing State v. Cordeira, 68 Haw. 207, 707 P.2d 373, 376 (1985)).