(Slip Opinion)     OCTOBER TERM, 2011     1

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is
being done in connection with this case, at the time the opinion is issued.
The syllabus constitutes no part of the opinion of the Court but has been
prepared by the Reporter of Decisions for the convenience of the reader.
See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## LAFLER *v.* COOPER

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT

No. 10–209.   Argued October 31, 2011—Decided March 21, 2012

Respondent was charged under Michigan law with assault with intent
to murder and three other offenses.  The prosecution offered to dis-
miss two of the charges and to recommend a 51-to-85-month sentence
on the other two, in exchange for a guilty plea.  In a communication
with the court, respondent admitted his guilt and expressed a will-
ingness to accept the offer.  But he rejected the offer, allegedly after
his attorney convinced him that the prosecution would be unable to
establish intent to murder because the victim had been shot below
the waist.  At trial, respondent was convicted on all counts and re-
ceived a mandatory minimum 185-to-360-month sentence.  In a sub-
sequent hearing, the state trial court rejected respondent's claim that
his attorney's advice to reject the plea constituted ineffective assis-
tance.  The Michigan Court of Appeals affirmed, rejecting the ineffec-
tive-assistance claim on the ground that respondent knowingly and
intelligently turned down the plea offer and chose to go to trial.  Re-
spondent renewed his claim in federal habeas.  Finding that the state
appellate court had unreasonably applied the constitutional effective-
assistance standards laid out in *Strickland* v. *Washington*, 466 U. S.
668, and *Hill* v. *Lockhart*, 474 U. S. 52, the District Court granted a
conditional writ and ordered specific performance of the original plea
offer.  The Sixth Circuit affirmed.  Applying *Strickland*, it found that
counsel had provided deficient performance by advising respondent of
an incorrect legal rule, and that respondent suffered prejudice be-
cause he lost the opportunity to take the more favorable sentence of-
fered in the plea.

*Held*:

   1. Where counsel's ineffective advice led to an offer's rejection, and
where the prejudice alleged is having to stand trial, a defendant must

Syllabus

show that but for the ineffective advice, there is a reasonable probability that the plea offer would have been presented to the court, that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the actual judgment and sentence imposed. Pp. 3–11.

(a) Because the parties agree that counsel's performance was deficient, the only question is how to apply *Strickland*'s prejudice test where ineffective assistance results in a rejection of the plea offer and the defendant is convicted at the ensuing trial. Pp. 3–4.

(b) In that context, the *Strickland* prejudice test requires a defendant to show a reasonable possibility that the outcome of the plea process would have been different with competent advice. The Sixth Circuit and other federal appellate courts have agreed with the *Strickland* prejudice test for rejected pleas adopted here by this Court. Petitioner and the Solicitor General propose a narrow view— that *Strickland* prejudice cannot arise from plea bargaining if the defendant is later convicted at a fair trial—but their reasoning is unpersuasive. First, they claim that the Sixth Amendment's sole purpose is to protect the right to a fair trial, but the Amendment actually requires effective assistance at critical stages of a criminal proceeding, including pretrial stages. This is consistent with the right to effective assistance on appeal, see, *e.g., Halbert* v. *Michigan*, 545 U. S. 605, and the right to counsel during sentencing, see, *e.g., Glover* v. *United States*, 531 U. S. 198, 203–204. This Court has not followed a rigid rule that an otherwise fair trial remedies errors not occurring at trial, but has instead inquired whether the trial cured the particular error at issue. See, *e.g., Vasquez* v. *Hillery*, 474 U. S. 254, 263. Second, this Court has previously rejected petitioner's argument that *Lockhart* v. *Fretwell*, 506 U. S. 364, modified *Strickland* and does so again here. *Fretwell* and *Nix* v. *Whiteside*, 475 U. S. 157, demonstrate that "it would be unjust to characterize the likelihood of a different outcome as legitimate 'prejudice,'" *Williams* v. *Taylor*, 529 U. S. 362, 391–392, where defendants would receive a windfall as a result of the application of an incorrect legal principle or a defense strategy outside the law. Here, however, respondent seeks relief from counsel's failure to meet a valid legal standard. Third, petitioner seeks to preserve the conviction by arguing that the Sixth Amendment's purpose is to ensure a conviction's reliability, but this argument fails to comprehend the full scope of the Sixth Amendment and is refuted by precedent. Here, the question is the fairness or reliability not of the trial but of the processes that preceded it, which caused respondent to lose benefits he would have received but for counsel's ineffective assistance. Furthermore, a reliable trial may not foreclose relief when counsel has failed to assert rights that may have

altered the outcome. See *Kimmelman* v. *Morrison*, 477 U. S. 365, 379. Petitioner's position that a fair trial wipes clean ineffective assistance during plea bargaining also ignores the reality that criminal justice today is for the most part a system of pleas, not a system of trials. See *Missouri* v. *Frye*, *ante,* at \_\_\_. Pp. 4–11.

2. Where a defendant shows ineffective assistance has caused the rejection of a plea leading to a more severe sentence at trial, the remedy must "neutralize the taint" of a constitutional violation, *United States* v. *Morrison*, 449 U. S. 361, 365, but must not grant a windfall to the defendant or needlessly squander the resources the State properly invested in the criminal prosecution, see *United States* v. *Mechanik*, 475 U. S. 66, 72. If the sole advantage is that the defendant would have received a lesser sentence under the plea, the court should have an evidentiary hearing to determine whether the defendant would have accepted the plea. If so, the court may exercise discretion in determining whether the defendant should receive the term offered in the plea, the sentence received at trial, or something in between. However, resentencing based on the conviction at trial may not suffice, *e.g.,* where the offered guilty plea was for less serious counts than the ones for which a defendant was convicted after trial, or where a mandatory sentence confines a judge's sentencing discretion. In these circumstances, the proper remedy may be to require the prosecution to reoffer the plea. The judge can then exercise discretion in deciding whether to vacate the conviction from trial and accept the plea, or leave the conviction undisturbed. In either situation, a court must weigh various factors. Here, it suffices to give two relevant considerations. First, a court may take account of a defendant's earlier expressed willingness, or unwillingness, to accept responsibility for his or her actions. Second, it is not necessary here to decide as a constitutional rule that a judge is required to disregard any information concerning the crime discovered after the plea offer was made. Petitioner argues that implementing a remedy will open the floodgates to litigation by defendants seeking to unsettle their convictions, but in the 30 years that courts have recognized such claims, there has been no indication that the system is overwhelmed or that defendants are receiving windfalls as a result of strategically timed *Strickland* claims. In addition, the prosecution and trial courts may adopt measures to help ensure against meritless claims. See *Frye*, *ante,* at \_\_\_. Pp. 11–14.

3. This case arises under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), but because the Michigan Court of Appeals' analysis of respondent's ineffective-assistance-of-counsel claim was contrary to clearly established federal law, AEDPA presents no bar to relief. Respondent has satisfied *Strickland*'s two-part test.

Syllabus

The parties concede the fact of deficient performance. And respondent has shown that but for that performance there is a reasonable probability he and the trial court would have accepted the guilty plea. In addition, as a result of not accepting the plea and being convicted at trial, he received a minimum sentence 3½ times greater than he would have received under the plea. As a remedy, the District Court ordered specific performance of the plea agreement, but the correct remedy is to order the State to reoffer the plea. If respondent accepts the offer, the state trial court can exercise its discretion in determining whether to vacate respondent's convictions and resentence pursuant to the plea agreement, to vacate only some of the convictions and resentence accordingly, or to leave the conviction and sentence resulting from the trial undisturbed. Pp. 14–16.

376 Fed. Appx. 563, vacated and remanded.

KENNEDY, J., delivered the opinion of the Court, in which GINSBURG, BREYER, SOTOMAYOR, and KAGAN, JJ., joined. SCALIA, J., filed a dissenting opinion, in which THOMAS, J., joined, and in which ROBERTS, C. J., joined as to all but Part IV. ALITO, J., filed a dissenting opinion.

NOTICE: This opinion is subject to formal revision before publication in the
preliminary print of the United States Reports. Readers are requested to
notify the Reporter of Decisions, Supreme Court of the United States, Wash-
ington, D. C. 20543, of any typographical or other formal errors, in order
that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

———————

No. 10–209

———————

## BLAINE LAFLER, PETITIONER *v.* ANTHONY COOPER

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF
APPEALS FOR THE SIXTH CIRCUIT

[March 21, 2012]

JUSTICE KENNEDY delivered the opinion of the Court.

In this case, as in *Missouri* v. *Frye, ante*, p. \_\_\_, also
decided today, a criminal defendant seeks a remedy when
inadequate assistance of counsel caused nonacceptance of
a plea offer and further proceedings led to a less favorable
outcome. In *Frye*, defense counsel did not inform the
defendant of the plea offer; and after the offer lapsed the
defendant still pleaded guilty, but on more severe terms.
Here, the favorable plea offer was reported to the client
but, on advice of counsel, was rejected. In *Frye* there was
a later guilty plea. Here, after the plea offer had been
rejected, there was a full and fair trial before a jury. After
a guilty verdict, the defendant received a sentence harsher
than that offered in the rejected plea bargain. The instant
case comes to the Court with the concession that counsel's
advice with respect to the plea offer fell below the stand-
ard of adequate assistance of counsel guaranteed by the
Sixth Amendment, applicable to the States through the
Fourteenth Amendment.

## I

On the evening of March 25, 2003, respondent pointed a
gun toward Kali Mundy's head and fired. From the rec-

ord, it is unclear why respondent did this, and at trial it was suggested that he might have acted either in self-defense or in defense of another person. In any event the shot missed and Mundy fled. Respondent followed in pursuit, firing repeatedly. Mundy was shot in her buttock, hip, and abdomen but survived the assault.

Respondent was charged under Michigan law with assault with intent to murder, possession of a firearm by a felon, possession of a firearm in the commission of a felony, misdemeanor possession of marijuana, and for being a habitual offender. On two occasions, the prosecution offered to dismiss two of the charges and to recommend a sentence of 51 to 85 months for the other two, in exchange for a guilty plea. In a communication with the court respondent admitted guilt and expressed a willingness to accept the offer. Respondent, however, later rejected the offer on both occasions, allegedly after his attorney convinced him that the prosecution would be unable to establish his intent to murder Mundy because she had been shot below the waist. On the first day of trial the prosecution offered a significantly less favorable plea deal, which respondent again rejected. After trial, respondent was convicted on all counts and received a mandatory minimum sentence of 185 to 360 months' imprisonment.

In a so-called *Ginther* hearing before the state trial court, see *People* v. *Ginther*, 390 Mich. 436, 212 N. W. 2d 922 (1973), respondent argued his attorney's advice to reject the plea constituted ineffective assistance. The trial judge rejected the claim, and the Michigan Court of Appeals affirmed. *People* v. *Cooper*, No. 250583, 2005 WL 599740 (Mar. 15, 2005) *(per curiam)*, App. to Pet. for Cert. 44a. The Michigan Court of Appeals rejected the claim of ineffective assistance of counsel on the ground that respondent knowingly and intelligently rejected two plea offers and chose to go to trial. The Michigan Supreme Court denied respondent's application for leave to file an

appeal. *People* v. *Cooper*, 474 Mich. 905, 705 N. W. 2d 118 (2005) (table).

Respondent then filed a petition for federal habeas relief under 28 U. S. C. §2254, renewing his ineffective-assistance-of-counsel claim. After finding, as required by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), that the Michigan Court of Appeals had un-reasonably applied the constitutional standards for effective assistance of counsel laid out in *Strickland* v. *Washington*, 466 U. S. 668 (1984), and *Hill* v. *Lockhart*, 474 U. S. 52 (1985), the District Court granted a conditional writ. *Cooper* v. *Lafler*, No. 06–11068, 2009 WL 817712, \*10 (ED Mich., Mar. 26, 2009), App. to Pet. for Cert. 41a–42a. To remedy the violation, the District Court ordered "specific performance of [respondent's] original plea agreement, for a minimum sentence in the range of fifty-one to eighty-five months." *Id.,* at \*9, App. to Pet. for Cert. 41a.

The United States Court of Appeals for the Sixth Circuit affirmed, 376 Fed. Appx. 563 (2010), finding "[e]ven full deference under AEDPA cannot salvage the state court's decision," *id.,* at 569. Applying *Strickland*, the Court of Appeals found that respondent's attorney had provided deficient performance by informing respondent of "an incorrect legal rule," 376 Fed. Appx., at 570–571, and that respondent suffered prejudice because he "lost out on an opportunity to plead guilty and receive the lower sentence that was offered to him." *Id.,* at 573. This Court granted certiorari. 562 U. S. \_\_\_ (2011).

## II

### A

Defendants have a Sixth Amendment right to counsel, a right that extends to the plea-bargaining process. *Frye, ante,* at 8; see also *Padilla* v. *Kentucky*, 559 U. S. \_\_\_, \_\_\_ (2010) (slip op., at 16); *Hill, supra,* at 57. During plea negotiations defendants are "entitled to the effective assis-

tance of competent counsel." *McMann* v. *Richardson*, 397 U. S. 759, 771 (1970). In *Hill*, the Court held "the two-part *Strickland* v. *Washington* test applies to challenges to guilty pleas based on ineffective assistance of counsel." 474 U. S., at 58. The performance prong of *Strickland* requires a defendant to show "'that counsel's representation fell below an objective standard of reasonableness.'" 474 U. S., at 57 (quoting *Strickland*, 466 U. S., at 688). In this case all parties agree the performance of respondent's counsel was deficient when he advised respondent to reject the plea offer on the grounds he could not be convicted at trial. In light of this concession, it is unnecessary for this Court to explore the issue.

The question for this Court is how to apply *Strickland*'s prejudice test where ineffective assistance results in a rejection of the plea offer and the defendant is convicted at the ensuing trial.

B

To establish *Strickland* prejudice a defendant must "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.,* at 694. In the context of pleas a defendant must show the outcome of the plea process would have been different with competent advice. See *Frye, ante,* at 12 (noting that *Strickland*'s inquiry, as applied to advice with respect to plea bargains, turns on "whether 'the result of the proceeding would have been different'" (quoting *Strickland*, *supra*, at 694)); see also *Hill*, 474 U. S., at 59 ("The . . . 'prejudice,' requirement . . . focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process"). In *Hill*, when evaluating the petitioner's claim that ineffective assistance led to the improvident acceptance of a guilty plea, the Court required the petitioner to show "that there is a reasonable probability that, but for counsel's

errors, [the defendant] would not have pleaded guilty and would have insisted on going to trial." *Ibid.*

In contrast to *Hill*, here the ineffective advice led not to an offer's acceptance but to its rejection. Having to stand trial, not choosing to waive it, is the prejudice alleged. In these circumstances a defendant must show that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (*i.e.*, that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed. Here, the Court of Appeals for the Sixth Circuit agreed with that test for *Strickland* prejudice in the context of a rejected plea bargain. This is consistent with the test adopted and applied by other appellate courts without demonstrated difficulties or systemic disruptions. See 376 Fed. Appx., at 571–573; see also, *e.g., United States* v. *Rodriguez Rodriguez*, 929 F. 2d 747, 753, n. 1 (CA1 1991) *(per curiam); United States* v. *Gordon*, 156 F. 3d 376, 380–381 (CA2 1998) *(per curiam); United States* v. *Day*, 969 F. 2d 39, 43–45 (CA3 1992); *Beckham* v. *Wainwright*, 639 F. 2d 262, 267 (CA5 1981); *Julian* v. *Bartley*, 495 F. 3d 487, 498–500 (CA7 2007); *Wanatee* v. *Ault*, 259 F. 3d 700, 703–704 (CA8 2001); *Nunes* v. *Mueller*, 350 F. 3d 1045, 1052–1053 (CA9 2003); *Williams* v. *Jones*, 571 F. 3d 1086, 1094–1095 (CA10 2009) *(per curiam); United States* v. *Gaviria*, 116 F. 3d 1498, 1512–1514 (CADC 1997) *(per curiam).*

Petitioner and the Solicitor General propose a different, far more narrow, view of the Sixth Amendment. They contend there can be no finding of *Strickland* prejudice arising from plea bargaining if the defendant is later convicted at a fair trial. The three reasons petitioner and

the Solicitor General offer for their approach are unpersuasive.

First, petitioner and the Solicitor General claim that the sole purpose of the Sixth Amendment is to protect the right to a fair trial. Errors before trial, they argue, are not cognizable under the Sixth Amendment unless they affect the fairness of the trial itself. See Brief for Petitioner 12–21; Brief for United States as *Amicus Curiae* 10–12. The Sixth Amendment, however, is not so narrow in its reach. Cf. *Frye, ante,* at 11 (holding that a defendant can show prejudice under *Strickland* even absent a showing that the deficient performance precluded him from going to trial). The Sixth Amendment requires effective assistance of counsel at critical stages of a criminal proceeding. Its protections are not designed simply to protect the trial, even though "counsel's absence [in these stages] may derogate from the accused's right to a fair trial." *United States* v. *Wade*, 388 U. S. 218, 226 (1967). The constitutional guarantee applies to pretrial critical stages that are part of the whole course of a criminal proceeding, a proceeding in which defendants cannot be presumed to make critical decisions without counsel's advice. This is consistent, too, with the rule that defendants have a right to effective assistance of counsel on appeal, even though that cannot in any way be characterized as part of the trial. See, *e.g., Halbert* v. *Michigan*, 545 U. S. 605 (2005); *Evitts* v. *Lucey*, 469 U. S. 387 (1985). The precedents also establish that there exists a right to counsel during sentencing in both noncapital, see *Glover* v. *United States*, 531 U. S. 198, 203–204 (2001); *Mempa* v. *Rhay*, 389 U. S. 128 (1967), and capital cases, see *Wiggins* v. *Smith*, 539 U. S. 510, 538 (2003). Even though sentencing does not concern the defendant's guilt or innocence, ineffective assistance of counsel during a sentencing hearing can result in *Strickland* prejudice because "any amount of [additional] jail time has Sixth Amendment significance." *Glover, supra,*

at 203.

The Court, moreover, has not followed a rigid rule that an otherwise fair trial remedies errors not occurring at the trial itself. It has inquired instead whether the trial cured the particular error at issue. Thus, in *Vasquez* v. *Hillery*, 474 U. S. 254 (1986), the deliberate exclusion of all African-Americans from a grand jury was prejudicial be- cause a defendant may have been tried on charges that would not have been brought at all by a properly constituted grand jury. *Id.,* at 263; see *Ballard* v. *United States*, 329 U. S. 187, 195 (1946) (dismissing an indictment returned by a grand jury from which women were excluded); see also *Stirone* v. *United States*, 361 U. S. 212, 218–219 (1960) (reversing a defendant's conviction because the jury may have based its verdict on acts not charged in the indictment). By contrast, in *United States* v. *Mechanik*, 475 U. S. 66 (1986), the complained-of error was a viola- tion of a grand jury rule meant to ensure probable cause existed to believe a defendant was guilty. A subsequent trial, resulting in a verdict of guilt, cured this error. See *id.,* at 72–73.

In the instant case respondent went to trial rather than accept a plea deal, and it is conceded this was the result of ineffective assistance during the plea negotiation process. Respondent received a more severe sentence at trial, one 3½ times more severe than he likely would have received by pleading guilty. Far from curing the error, the trial caused the injury from the error. Even if the trial itself is free from constitutional flaw, the defendant who goes to trial instead of taking a more favorable plea may be preju- diced from either a conviction on more serious counts or the imposition of a more severe sentence.

Second, petitioner claims this Court refined *Strickland*'s prejudice analysis in *Fretwell* to add an additional re- quirement that the defendant show that ineffective assis- tance of counsel led to his being denied a substantive or

procedural right. Brief for Petitioner 12–13. The Court has rejected the argument that *Fretwell* modified *Strickland* before and does so again now. See *Williams* v. *Taylor*, 529 U. S. 362, 391 (2000) ("The Virginia Supreme Court erred in holding that our decision in *Lockhart* v. *Fretwell*, 506 U. S. 364 (1993), modified or in some way supplanted the rule set down in *Strickland*"); see also *Glover*, *supra*, at 203 ("The Court explained last Term [in *Williams*] that our holding in *Lockhart* does not supplant the *Strickland* analysis").

Fretwell could not show *Strickland* prejudice resulting from his attorney's failure to object to the use of a sentencing factor the Eighth Circuit had erroneously (and temporarily) found to be impermissible. *Fretwell*, 506 U. S., at 373. Because the objection upon which his ineffective-assistance-of-counsel claim was premised was meritless, Fretwell could not demonstrate an error entitling him to relief. The case presented the "unusual circumstance where the defendant attempts to demonstrate prejudice based on considerations that, as a matter of law, ought not inform the inquiry." *Ibid.* (O'Connor, J., concurring). See also *ibid.* (recognizing "[t]he determinative question— whether there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different—remains unchanged" (internal quotation marks and citation omitted)). It is for this same reason a defendant cannot show prejudice based on counsel's refusal to present perjured testimony, even if such testimony might have affected the outcome of the case. See *Nix* v. *Whiteside*, 475 U. S. 157, 175 (1986) (holding first that counsel's refusal to present perjured testimony breached no professional duty and second that it cannot establish prejudice under *Strickland*).

Both *Fretwell* and *Nix* are instructive in that they demonstrate "there are also situations in which it would be unjust to characterize the likelihood of a different

outcome as legitimate 'prejudice,'" *Williams*, *supra*, at 391–392, because defendants would receive a windfall as a result of the application of an incorrect legal principle or a defense strategy outside the law. Here, however, the injured client seeks relief from counsel's failure to meet a valid legal standard, not from counsel's refusal to violate it. He maintains that, absent ineffective counsel, he would have accepted a plea offer for a sentence the prosecution evidently deemed consistent with the sound administration of criminal justice. The favorable sentence that eluded the defendant in the criminal proceeding appears to be the sentence he or others in his position would have received in the ordinary course, absent the failings of counsel. See Bibas, Regulating the Plea-Bargaining Market: From Caveat Emptor to Consumer Protection, 99 Cal. L. Rev. 1117, 1138 (2011) ("The expected post-trial sentence is imposed in only a few percent of cases. It is like the sticker price for cars: only an ignorant, ill-advised consumer would view full price as the norm and anything less a bargain"); see also *Frye*, *ante,* at 7–8. If a plea bargain has been offered, a defendant has the right to effective assistance of counsel in considering whether to accept it. If that right is denied, prejudice can be shown if loss of the plea opportunity led to a trial resulting in a conviction on more serious charges or the imposition of a more severe sentence.

It is, of course, true that defendants have "no right to be offered a plea . . . nor a federal right that the judge accept it." *Frye*, *ante,* at 12. In the circumstances here, that is beside the point. If no plea offer is made, or a plea deal is accepted by the defendant but rejected by the judge, the issue raised here simply does not arise. Much the same reasoning guides cases that find criminal defendants have a right to effective assistance of counsel in direct appeals even though the Constitution does not require States to provide a system of appellate review at all. See *Evitts*, 469

U. S. 387; see also *Douglas* v. *California*, 372 U. S. 353 (1963). As in those cases, "[w]hen a State opts to act in a field where its action has significant discretionary elements, it must nonetheless act in accord with the dictates of the Constitution." *Evitts*, *supra*, at 401.

Third, petitioner seeks to preserve the conviction obtained by the State by arguing that the purpose of the Sixth Amendment is to ensure "the reliability of [a] conviction following trial." Brief for Petitioner 13. This argument, too, fails to comprehend the full scope of the Sixth Amendment's protections; and it is refuted by precedent. *Strickland* recognized "[t]he benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." 466 U. S., at 686. The goal of a just result is not divorced from the reliability of a conviction, see *United States* v. *Cronic*, 466 U. S. 648, 658 (1984); but here the question is not the fairness or reliability of the trial but the fairness and regularity of the processes that preceded it, which caused the defendant to lose benefits he would have received in the ordinary course but for counsel's ineffective assistance.

There are instances, furthermore, where a reliable trial does not foreclose relief when counsel has failed to assert rights that may have altered the outcome. In *Kimmelman* v. *Morrison*, 477 U. S. 365 (1986), the Court held that an attorney's failure to timely move to suppress evidence during trial could be grounds for federal habeas relief. The Court rejected the suggestion that the "failure to make a timely request for the exclusion of illegally seized evidence" could not be the basis for a Sixth Amendment violation because the evidence "is 'typically reliable and often the most probative information bearing on the guilt or innocence of the defendant.'" *Id.*, at 379 (quoting *Stone* v. *Powell*, 428 U. S. 465, 490 (1976)). "The constitutional

rights of criminal defendants," the Court observed, "are granted to the innocent and the guilty alike. Consequently, we decline to hold either that the guarantee of effective assistance of counsel belongs solely to the innocent or that it attaches only to matters affecting the determination of actual guilt." 477 U. S*.,* at 380. The same logic applies here. The fact that respondent is guilty does not mean he was not entitled by the Sixth Amendment to effective assistance or that he suffered no prejudice from his attorney's deficient performance during plea bargaining.

In the end, petitioner's three arguments amount to one general contention: A fair trial wipes clean any deficient performance by defense counsel during plea bargaining. That position ignores the reality that criminal justice today is for the most part a system of pleas, not a system of trials. Ninety-seven percent of federal convictions and ninety-four percent of state convictions are the result of guilty pleas. See *Frye*, *ante,* at 7. As explained in *Frye*, the right to adequate assistance of counsel cannot be defined or enforced without taking account of the central role plea bargaining plays in securing convictions and determining sentences. *Ibid.* ("[I]t is insufficient simply to point to the guarantee of a fair trial as a backstop that inoculates any errors in the pretrial process").

## C

Even if a defendant shows ineffective assistance of counsel has caused the rejection of a plea leading to a trial and a more severe sentence, there is the question of what constitutes an appropriate remedy. That question must now be addressed.

Sixth Amendment remedies should be "tailored to the injury suffered from the constitutional violation and should not unnecessarily infringe on competing interests." *United States* v. *Morrison*, 449 U. S. 361, 364 (1981). Thus, a remedy must "neutralize the taint" of a constitu-

tional violation, *id.,* at 365, while at the same time not grant a windfall to the defendant or needlessly squander the considerable resources the State properly invested in the criminal prosecution. See *Mechanik*, 475 U. S., at 72 ("The reversal of a conviction entails substantial social costs: it forces jurors, witnesses, courts, the prosecution, and the defendants to expend further time, energy, and other resources to repeat a trial that has already once taken place; victims may be asked to relive their disturbing experiences").

The specific injury suffered by defendants who decline a plea offer as a result of ineffective assistance of counsel and then receive a greater sentence as a result of trial can come in at least one of two forms. In some cases, the sole advantage a defendant would have received under the plea is a lesser sentence. This is typically the case when the charges that would have been admitted as part of the plea bargain are the same as the charges the defendant was convicted of after trial. In this situation the court may conduct an evidentiary hearing to determine whether the defendant has shown a reasonable probability that but for counsel's errors he would have accepted the plea. If the showing is made, the court may exercise discretion in determining whether the defendant should receive the term of imprisonment the government offered in the plea, the sentence he received at trial, or something in between.

In some situations it may be that resentencing alone will not be full redress for the constitutional injury. If, for example, an offer was for a guilty plea to a count or counts less serious than the ones for which a defendant was convicted after trial, or if a mandatory sentence confines a judge's sentencing discretion after trial, a resentencing based on the conviction at trial may not suffice. See, *e.g., Williams*, 571 F. 3d, at 1088; *Riggs* v. *Fairman*, 399 F. 3d 1179, 1181 (CA9 2005). In these circumstances, the proper exercise of discretion to remedy the constitutional

injury may be to require the prosecution to reoffer the plea proposal. Once this has occurred, the judge can then exercise discretion in deciding whether to vacate the conviction from trial and accept the plea or leave the conviction undisturbed.

In implementing a remedy in both of these situations, the trial court must weigh various factors; and the boundaries of proper discretion need not be defined here. Principles elaborated over time in decisions of state and federal courts, and in statutes and rules, will serve to give more complete guidance as to the factors that should bear upon the exercise of the judge's discretion. At this point, however, it suffices to note two considerations that are of relevance.

First, a court may take account of a defendant's earlier expressed willingness, or unwillingness, to accept responsibility for his or her actions. Second, it is not necessary here to decide as a constitutional rule that a judge is required to prescind (that is to say disregard) any information concerning the crime that was discovered after the plea offer was made. The time continuum makes it difficult to restore the defendant and the prosecution to the precise positions they occupied prior to the rejection of the plea offer, but that baseline can be consulted in finding a remedy that does not require the prosecution to incur the expense of conducting a new trial.

Petitioner argues that implementing a remedy here will open the floodgates to litigation by defendants seeking to unsettle their convictions. See Brief for Petitioner 20. Petitioner's concern is misplaced. Courts have recognized claims of this sort for over 30 years, see *supra*, at 5, and yet there is no indication that the system is overwhelmed by these types of suits or that defendants are receiving windfalls as a result of strategically timed *Strickland* claims. See also *Padilla*, 559 U. S., at ___ (slip op., at 14) ("We confronted a similar 'floodgates' concern in *Hill*," but

a "flood did not follow in that decision's wake"). In addition, the "prosecution and the trial courts may adopt some measures to help ensure against late, frivolous, or fabricated claims after a later, less advantageous plea offer has been accepted or after a trial leading to conviction." *Frye*, *ante,* at 10. See also *ibid.* (listing procedures currently used by various States). This, too, will help ensure against meritless claims.

## III

The standards for ineffective assistance of counsel when a defendant rejects a plea offer and goes to trial must now be applied to this case. Respondent brings a federal collateral challenge to a state-court conviction. Under AEDPA, a federal court may not grant a petition for a writ of habeas corpus unless the state court's adjudication on the merits was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U. S. C. §2254(d)(1). A decision is contrary to clearly established law if the state court "applies a rule that contradicts the governing law set forth in [Supreme Court] cases." *Williams* v. *Taylor*, 529 U. S. 362, 405 (2000) (opinion for the Court by O'Connor, J.). The Court of Appeals for the Sixth Circuit could not determine whether the Michigan Court of Appeals addressed respondent's ineffective-assistance-of-counsel claim or, if it did, "what the court decided, or even whether the correct legal rule was identified." 376 Fed. Appx., at 568–569.

The state court's decision may not be quite so opaque as the Court of Appeals for the Sixth Circuit thought, yet the federal court was correct to note that AEDPA does not present a bar to granting respondent relief. That is because the Michigan Court of Appeals identified respondent's ineffective-assistance-of-counsel claim but failed to apply *Strickland* to assess it. Rather than applying

*Strickland*, the state court simply found that respondent's rejection of the plea was knowing and voluntary. *Cooper*, 2005 WL 599740, *1, App. to Pet. for Cert. 45a. An inquiry into whether the rejection of a plea is knowing and voluntary, however, is not the correct means by which to address a claim of ineffective assistance of counsel. See *Hill*, 474 U. S., at 370 (applying *Strickland* to assess a claim of ineffective assistance of counsel arising out of the plea negotiation process). After stating the incorrect standard, moreover, the state court then made an irrelevant observation about counsel's performance at trial and mischaracterized respondent's claim as a complaint that his attorney did not obtain a more favorable plea bargain. By failing to apply *Strickland* to assess the ineffective-assistance-of-counsel claim respondent raised, the state court's adjudication was contrary to clearly established federal law. And in that circumstance the federal courts in this habeas action can determine the principles necessary to grant relief. See *Panetti* v. *Quarterman*, 551 U. S. 930, 948 (2007).

Respondent has satisfied *Strickland*'s two-part test. Regarding performance, perhaps it could be accepted that it is unclear whether respondent's counsel believed respondent could not be convicted for assault with intent to murder as a matter of law because the shots hit Mundy below the waist, or whether he simply thought this would be a persuasive argument to make to the jury to show lack of specific intent. And, as the Court of Appeals for the Sixth Circuit suggested, an erroneous strategic prediction about the outcome of a trial is not necessarily deficient performance. Here, however, the fact of deficient performance has been conceded by all parties. The case comes to us on that assumption, so there is no need to address this question.

As to prejudice, respondent has shown that but for counsel's deficient performance there is a reasonable

probability he and the trial court would have accepted the guilty plea. See 376 Fed. Appx., at 571–572. In addition, as a result of not accepting the plea and being convicted at trial, respondent received a minimum sentence 3½ times greater than he would have received under the plea. The standard for ineffective assistance under *Strickland* has thus been satisfied.

As a remedy, the District Court ordered specific performance of the original plea agreement. The correct remedy in these circumstances, however, is to order the State to reoffer the plea agreement. Presuming respondent accepts the offer, the state trial court can then exercise its discretion in determining whether to vacate the convictions and resentence respondent pursuant to the plea agreement, to vacate only some of the convictions and resentence respondent accordingly, or to leave the convictions and sentence from trial undisturbed. See Mich. Ct. Rule 6.302(C)(3) (2011) ("If there is a plea agreement and its terms provide for the defendant's plea to be made in exchange for a specific sentence disposition or a prosecutorial sentence recommendation, the court may . . . reject the agreement"). Today's decision leaves open to the trial court how best to exercise that discretion in all the circumstances of the case.

The judgment of the Court of Appeals for the Sixth Circuit is vacated, and the case is remanded for further proceedings consistent with this opinion.

*It is so ordered.*

# SUPREME COURT OF THE UNITED STATES

———————

No. 10–209

———————

## BLAINE LAFLER, PETITIONER *v.* ANTHONY COOPER

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF
APPEALS FOR THE SIXTH CIRCUIT

[March 21, 2012]

JUSTICE SCALIA, with whom JUSTICE THOMAS joins, and
with whom THE CHIEF JUSTICE joins as to all but Part IV,
dissenting.

> *"If a plea bargain has been offered, a defendant has
> the right to effective assistance of counsel in consider-
> ing whether to accept it. If that right is denied, preju-
> dice can be shown if loss of the plea opportunity led
> to a trial resulting in a conviction on more serious
> charges or the imposition of a more severe sentence."*
> Ante, at 9.
>
> *"The inquiry then becomes how to define the duty
> and responsibilities of defense counsel in the plea bar-
> gain process. This is a difficult question. . . . Bargain-
> ing is, by its nature, defined to a substantial degree by
> personal style. . . . This case presents neither the ne-
> cessity nor the occasion to define the duties of defense
> counsel in those respects . . . ."* Missouri v. Frye, ante,
> at 8.

With those words from this and the companion case, the
Court today opens a whole new field of constitutionalized
criminal procedure: plea-bargaining law. The ordinary
criminal process has become too long, too expensive, and
unpredictable, in no small part as a consequence of an
intricate federal Code of Criminal Procedure imposed on
the States by this Court in pursuit of perfect justice. See

Friendly, The Bill of Rights as a Code of Criminal Procedure, 53 Cal. L. Rev. 929 (1965). The Court now moves to bring perfection to the alternative in which prosecutors and defendants have sought relief. Today's opinions deal with only two aspects of counsel's plea-bargaining inadequacy, and leave other aspects (who knows what they might be?) to be worked out in further constitutional litigation that will burden the criminal process. And it would be foolish to think that "constitutional" rules governing *counsel*'s behavior will not be followed by rules governing the *prosecution*'s behavior in the plea-bargaining process that the Court today announces "'*is* the criminal justice system,'" *Frye, ante,* at 7 (quoting approvingly from Scott & Stuntz, Plea Bargaining as Contract, 101 Yale L. J. 1909, 1912 (1992) (hereinafter Scott)). Is it constitutional, for example, for the prosecution to withdraw a plea offer that has already been accepted? Or to withdraw an offer before the defense has had adequate time to consider and accept it? Or to make no plea offer at all, even though its case is weak—thereby excluding the defendant from "the criminal justice system"?

Anthony Cooper received a full and fair trial, was found guilty of all charges by a unanimous jury, and was given the sentence that the law prescribed. The Court nonetheless concludes that Cooper is entitled to some sort of habeas corpus relief (perhaps) because his attorney's allegedly incompetent advice regarding a plea offer *caused* him to receive a full and fair trial. That conclusion is foreclosed by our precedents. Even if it were not foreclosed, the constitutional right to effective plea-bargainers that it establishes is at least a new rule of law, which does not undermine the Michigan Court of Appeals' decision and therefore cannot serve as the basis for habeas relief. And the remedy the Court announces—namely, whatever the state trial court in its discretion prescribes, down to and including no remedy at all—is unheard-of and quite ab-

surd for violation of a constitutional right. I respectfully dissent.

## I

This case and its companion, *Missouri* v. *Frye*, *ante*, p. \_\_\_, raise relatively straightforward questions about the scope of the right to effective assistance of counsel. Our case law originally derived that right from the Due Process Clause, and its guarantee of a fair trial, see *United States* v. *Gonzalez-Lopez*, 548 U. S. 140, 147 (2006), but the seminal case of *Strickland* v. *Washington*, 466 U. S. 668 (1984), located the right within the Sixth Amendment. As the Court notes, *ante,* at 6, the right to counsel does not begin at trial. It extends to "any stage of the prosecution, formal or informal, in court or out, where counsel's absence might derogate from the accused's right to a fair trial." *United States* v. *Wade*, 388 U. S. 218, 226 (1967). Applying that principle, we held that the "entry of a guilty plea, whether to a misdemeanor or a felony charge, ranks as a 'critical stage' at which the right to counsel adheres." *Iowa* v. *Tovar*, 541 U. S. 77, 81 (2004); see also *Hill* v. *Lockhart*, 474 U. S. 52, 58 (1985). And it follows from this that *acceptance* of a plea offer is a critical stage. That, and nothing more, is the point of the Court's observation in *Padilla* v. *Kentucky*, 559 U. S. \_\_\_, \_\_\_ (2010) (slip op., at 16), that "the negotiation of a plea bargain is a critical phase of litigation for purposes of the Sixth Amendment right to effective assistance of counsel." The defendant in *Padilla* had accepted the plea bargain and pleaded guilty, abandoning his right to a fair trial; he was entitled to advice of competent counsel before he did so. The Court has never held that the rule articulated in *Padilla*, *Tovar*, and *Hill* extends to all aspects of plea negotiations, requiring not just advice of competent counsel before the defendant accepts a plea bargain and pleads guilty, but also the advice of competent counsel before the defendant rejects a

plea bargain and stands on his constitutional right to a fair trial. The latter is a vast departure from our past cases, protecting not just the constitutionally prescribed right to a fair adjudication of guilt and punishment, but a judicially invented right to effective plea bargaining.

It is also apparent from *Strickland* that bad plea bargaining has nothing to do with ineffective assistance of counsel in the constitutional sense. *Strickland* explained that "[i]n giving meaning to the requirement [of effective assistance], . . . we must take its purpose—to ensure a fair trial—as the guide." 466 U. S., at 686. Since "the right to the effective assistance of counsel is recognized not for its own sake, but because of the effect it has on the ability of the accused to receive a fair trial," *United States* v. *Cronic*, 466 U. S. 648, 658 (1984), the "benchmark" inquiry in evaluating any claim of ineffective assistance is whether counsel's performance "so undermined the proper functioning of the adversarial process" that it failed to produce a reliably "just result." *Strickland,* 466 U. S., at 686. That is what *Strickland*'s requirement of "prejudice" consists of: Because the right to effective assistance has as its purpose the assurance of a fair trial, the right is not infringed unless counsel's mistakes call into question the basic justice of a defendant's conviction or sentence. That has been, until today, entirely clear. A defendant must show "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.,* at 687. See also *Gonzalez-Lopez*, *supra,* at 147. Impairment of fair trial is how we distinguish between unfortunate attorney error and error of constitutional significance.[1]

_____

[1] Rather than addressing the constitutional origins of the *right to effective counsel*, the Court responds to the broader claim (raised by no one) that "the sole purpose of the *Sixth Amendment* is to protect the right to a fair trial." *Ante,* at 6 (emphasis added). Cf. Brief for United States as *Amicus Curiae* 10–12 (arguing that the "purpose of the Sixth

To be sure, *Strickland* stated a rule of thumb for measuring prejudice which, applied blindly and out of context, could support the Court's holding today: "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." 466 U. S., at 694. *Strickland* itself cautioned, however, that its test was not to be applied in a mechanical fashion, and that courts were not to divert their "ultimate focus" from "the fundamental fairness of the proceeding whose result is being challenged." *Id.,* at 696. And until today we have followed that course.

In *Lockhart* v. *Fretwell*, 506 U. S. 364 (1993), the deficient performance at issue was the failure of counsel for a defendant who had been sentenced to death to make an objection that would have produced a sentence of life

─────────

Amendment *right to counsel* is to secure a fair trial" (emphasis added)); Brief for Petitioner 12–21 (same). To destroy that straw man, the Court cites cases in which violations of rights *other* than the right to effective counsel—and, perplexingly, even rights found outside the Sixth Amendment and the Constitution entirely—were not cured by a subsequent trial. *Vasquez* v. *Hillery*, 474 U. S. 254 (1986) (violation of equal protection in grand jury selection); *Ballard* v. *United States*, 329 U. S. 187 (1946) (violation of statutory scheme providing that women serve on juries); *Stirone* v. *United States*, 361 U. S. 212 (1960) (violation of Fifth Amendment right to indictment by grand jury). Unlike the right to effective counsel, no showing of prejudice is required to make violations of the rights at issue in *Vasquez*, *Ballard*, and *Stirone* complete. See *Vasquez*, *supra*, at 263–264 ("[D]iscrimination in the grand jury undermines the structural integrity of the criminal tribunal itself, and is not amenable to harmless-error review"); *Ballard*, *supra*, at 195 ("[R]eversible error does not depend on a showing of prejudice in an individual case"); *Stirone*, *supra*, at 217 ("Deprivation of such a basic right is far too serious to be treated as nothing more than a variance and then dismissed as harmless error"). Those cases are thus irrelevant to the question presented here, which is whether a defendant can establish *prejudice* under *Strickland* v. *Washington*, 466 U. S. 668 (1984), while conceding the fairness of his conviction, sentence, and appeal.

imprisonment instead. The objection was fully supported
by then-extant Circuit law, so that the sentencing court
would have been compelled to sustain it, producing a life
sentence that principles of double jeopardy would likely
make final. See *id.,* at 383–385 (Stevens, J., dissenting);
*Bullington* v. *Missouri*, 451 U. S. 430 (1981). By the time
Fretwell's claim came before us, however, the Circuit law
had been overruled in light of one of our cases. We deter-
mined that a prejudice analysis "focusing solely on mere
outcome determination, without attention to whether the
result of the proceeding was fundamentally unfair or
unreliable," would be defective. *Fretwell,* 506 U. S., at
369. Because counsel's error did not "deprive the defend-
ant of any substantive or procedural right to which the
law entitles him," the defendant's sentencing proceeding
was fair and its result was reliable, even though counsel's
error may have affected its outcome. *Id.,* at 372. In *Wil-
liams* v. *Taylor*, 529 U. S. 362, 391–393 (2000), we ex-
plained that even though *Fretwell* did not mechanically
apply an outcome-based test for prejudice, its reasoning
was perfectly consistent with *Strickland.* "Fretwell's
counsel had not deprived him of any substantive or pro-
cedural right to which the law entitled him." 529 U. S.
at 392.[2]

——————

[2] *Kimmelman* v. *Morrison*, 477 U. S. 365 (1986), cited by the Court,
*ante,* at 10–11, does not contradict this principle. That case, which
predated *Fretwell* and *Williams*, considered whether our holding that
Fourth Amendment claims fully litigated in state court cannot be
raised in federal habeas "should be extended to Sixth Amendment
claims of ineffective assistance of counsel where the principal allegation
and manifestation of inadequate representation is counsel's failure to
file a timely motion to suppress evidence allegedly obtained in violation
of the Fourth Amendment." 477 U. S., at 368. Our negative answer to
that question had nothing to do with the issue here. The parties in
*Kimmelman* had not raised the question "whether the admission of
illegally seized but reliable evidence can ever constitute 'prejudice'
under *Strickland*"—a question similar to the one presented here—and

Those precedents leave no doubt about the answer to the question presented here. As the Court itself observes, a criminal defendant has no right to a plea bargain. *Ante,* at 9. "[T]here is no constitutional right to plea bargain; the prosecutor need not do so if he prefers to go to trial." *Weatherford* v. *Bursey*, 429 U. S. 545, 561 (1977). Counsel's mistakes in this case thus did not "deprive the defendant of a substantive or procedural right to which the law entitles him," *Williams, supra,* at 393. Far from being "beside the point," *ante,* at 9, that is critical to correct application of our precedents. Like *Fretwell*, this case "concerns the unusual circumstance where the defendant attempts to demonstrate prejudice based on considerations that, as a matter of law, ought not inform the inquiry," 506 U. S., at 373 (O'Connor, J., concurring); he claims "that he might have been denied 'a right the law simply does not recognize,'" *id.,* at 375 (same). *Strickland*, *Fretwell*, and *Williams* all instruct that the pure outcome-based test on which the Court relies is an erroneous measure of cognizable prejudice. In ignoring *Strickland*'s "ultimate focus . . . on the fundamental fairness of the proceeding whose result is being challenged," 466 U. S., at 696, the Court has lost the forest for the trees, leading it to accept what we have previously rejected, the "novel argument that constitutional rights are infringed by trying the defendant rather than accepting his plea of guilty." *Weatherford*, *supra*, at 561.

———————

the Court therefore did not address it. *Id.,* at 391 (Powell, J., concurring in judgment); see also *id.,* at 380. *Kimmelman* made clear, however, how the answer to that question is to be determined: "The essence of an ineffective-assistance claim is that counsel's unprofessional errors so upset the adversarial balance between defense and prosecution *that the trial was rendered unfair and the verdict rendered suspect,*" *id.,* at 374 (emphasis added). "Only those habeas petitioners who can prove under *Strickland that they have been denied a fair trial* . . . will be granted the writ," *id.,* at 382 (emphasis added). In short, *Kimmelman*'s only relevance is to prove the Court's opinion wrong.

## II

Novelty alone is the second, independent reason why the Court's decision is wrong. This case arises on federal habeas, and hence is governed by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). Since, as the Court acknowledges, the Michigan Court of Appeals adjudicated Cooper's ineffective-assistance claim on the merits, AEDPA bars federal courts from granting habeas relief unless that court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U. S. C. §2254(d)(1). Yet the Court concludes that §2254(d)(1) does not bar relief here, because "[b]y failing to apply *Strickland* to assess the ineffective-assistance-of-counsel claim respondent raised, the state court's adjudication was contrary to clearly established federal law." *Ante,* at 15. That is not so.

The relevant portion of the Michigan Court of Appeals decision reads as follows:

"To establish ineffective assistance, the defendant must demonstrate that his counsel's performance fell below an objective standard of reasonableness and that counsel's representation so prejudiced the defendant that he was deprived of a fair trial. With respect to the prejudice aspect of the test, the defendant must demonstrate a reasonable probability that, but for counsel's errors, the result of the proceedings would have been different, and that the attendant proceedings were fundamentally unfair and unreliable.

"Defendant challenges the trial court's finding after a *Ginther* hearing that defense counsel provided effective assistance to defendant during the plea bargaining process. He contends that defense counsel failed to convey the benefits of the plea offer to him and ignored his desire to plead guilty, and that these fail-

ures led him to reject a plea offer that he now wishes to accept.　However, the record shows that defendant knowingly and intelligently rejected two plea offers and chose to go to trial.　The record fails to support defendant's contentions that defense counsel's representation was ineffective because he rejected a defense based on [a] claim of self-defense and because he did not obtain a more favorable plea bargain for defendant."　*People* v. *Cooper*, No. 250583 (Mar. 15, 2005), App. to Pet. for Cert. 45a, 2005 WL 599740, *1 *(per curiam)* (footnote and citations omitted).

　　The first paragraph above, far from ignoring *Strickland*, recites its standard with a good deal more accuracy than the Court's opinion.　The second paragraph, which is presumably an application of the standard recited in the first, says that "defendant knowingly and intelligently rejected two plea offers and chose to go to trial."　This can be regarded as a denial that there was anything "fundamentally unfair" about Cooper's conviction and sentence, so that no *Strickland* prejudice had been shown.　On the other hand, the entire second paragraph can be regarded as a contention that Cooper's claims of inadequate representation were unsupported by the record.　The state court's analysis was admittedly not a model of clarity, but federal habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems," not a license to penalize a state court for its opinion-writing technique.　*Harrington* v. *Richter*, 562 U. S. ___, ___ (2011) (slip op., at 13) (internal quotation marks omitted).　The Court's readiness to find error in the Michigan court's opinion is "inconsistent with the presumption that state courts know and follow the law," *Woodford* v. *Visciotti*, 537 U. S. 19, 24 (2002) *(per curiam)*, a presumption borne out here by the state court's recitation of the correct legal standard.

　　Since it is ambiguous whether the state court's holding

was based on a lack of prejudice or rather the court's factual determination that there had been no deficient performance, to provide relief under AEDPA this Court must conclude that *both* holdings would have been unreasonable applications of clearly established law. See *Premo* v. *Moore*, 562 U. S. ___, ___ (2011) (slip op., at 7). The first is impossible of doing, since this Court has never held that a defendant in Cooper's position can establish *Strickland* prejudice. The Sixth Circuit thus violated AEDPA in granting habeas relief, and the Court now does the same.

## III

It is impossible to conclude discussion of today's extraordinary opinion without commenting upon the remedy it provides for the unconstitutional conviction. It is a remedy unheard-of in American jurisprudence—and, I would be willing to bet, in the jurisprudence of any other country.

The Court requires Michigan to "reoffer the plea agreement" that was rejected because of bad advice from counsel. *Ante,* at 16. That would indeed be a powerful remedy— but for the fact that Cooper's acceptance of that reoffered agreement is not conclusive. Astoundingly, "the state trial court can then *exercise its discretion* in determining whether to vacate the convictions and resentence respondent pursuant to the plea agreement, to vacate only some of the convictions and resentence respondent accordingly, *or to leave the convictions and sentence from trial undisturbed.*" *Ibid.* (emphasis added).

Why, one might ask, require a "reoffer" of the plea agreement, and its acceptance by the defendant? If the district court finds (as a necessary element, supposedly, of *Strickland* prejudice) that Cooper *would have accepted* the original offer, and would thereby have avoided trial and conviction, why not skip the reoffer-and-reacceptance minuet and simply leave it to the discretion of the state

trial court what the remedy shall be? The answer, of course, is camouflage. Trial courts, after all, *regularly* accept or reject plea agreements, so there seems to be nothing extraordinary about their accepting or rejecting the new one mandated by today's decision. But the acceptance or rejection of a plea agreement that has no status whatever under the United States Constitution is worlds apart from what this is: "discretionary" specification of a remedy for an unconstitutional criminal conviction.

To be sure, the Court asserts that there are "factors" which bear upon (and presumably limit) exercise of this discretion—factors that it is not prepared to specify in full, much less assign some determinative weight. "Principles elaborated over time in decisions of state and federal courts, and in statutes and rules" will (in the Court's rosy view) sort all that out. *Ante,* at 13. I find it extraordinary that "statutes and rules" can specify the remedy for a criminal defendant's unconstitutional conviction. Or that the remedy for an unconstitutional conviction should *ever* be subject *at all* to a trial judge's discretion. Or, finally, that the remedy could *ever* include no remedy at all.

I suspect that the Court's squeamishness in fashioning a remedy, and the incoherence of what it comes up with, is attributable to its realization, deep down, that there is no real constitutional violation here anyway. The defendant has been fairly tried, lawfully convicted, and properly sentenced, and *any* "remedy" provided for this will do nothing but undo the just results of a fair adversarial process.

IV

In many—perhaps most—countries of the world, American-style plea bargaining is forbidden in cases as serious as this one, even for the purpose of obtaining testimony that enables conviction of a greater malefactor, much less

for the purpose of sparing the expense of trial. See, *e.g.,* World Plea Bargaining 344, 363–366 (S. Thaman ed. 2010). In Europe, many countries adhere to what they aptly call the "legality principle" by requiring prosecutors to charge all prosecutable offenses, which is typically incompatible with the practice of charge-bargaining. See, *e.g., id.,* at xxii; Langbein, Land Without Plea Bargaining: How the Germans Do It, 78 Mich. L. Rev. 204, 210–211 (1979) (describing the "Legalitätsprinzip," or rule of compulsory prosecution, in Germany). Such a system reflects an admirable belief that the law is the law, and those who break it should pay the penalty provided.

In the United States, we have plea bargaining a-plenty, but until today it has been regarded as a necessary evil. It presents grave risks of prosecutorial overcharging that effectively compels an innocent defendant to avoid massive risk by pleading guilty to a lesser offense; and for guilty defendants it often—perhaps usually—results in a sentence well below what the law prescribes for the actual crime. But even so, we accept plea bargaining because many believe that without it our long and expensive process of criminal trial could not sustain the burden imposed on it, and our system of criminal justice would grind to a halt. See, *e.g.,* Alschuler, Plea Bargaining and its History, 79 Colum. L. Rev. 1, 38 (1979).

Today, however, the Supreme Court of the United States elevates plea bargaining from a necessary evil to a constitutional entitlement. It is no longer a somewhat embarrassing adjunct to our criminal justice system; rather, as the Court announces in the companion case to this one, "'it *is* the criminal justice system.'" *Frye*, *ante,* at 7 (quoting approvingly from Scott 1912). Thus, even though there is no doubt that the respondent here is guilty of the offense with which he was charged; even though he has received the exorbitant gold standard of American justice—a full-dress criminal trial with its innumerable

constitutional and statutory limitations upon the evidence that the prosecution can bring forward, and (in Michigan as in most States[3]) the requirement of a unanimous guilty verdict by impartial jurors; the Court says that his conviction is invalid because he was deprived of his *constitutional entitlement* to plea-bargain.

I am less saddened by the outcome of this case than I am by what it says about this Court's attitude toward criminal justice. The Court today embraces the sporting-chance theory of criminal law, in which the State functions like a conscientious casino-operator, giving each player a fair chance to beat the house, that is, to serve less time than the law says he deserves. And when a player is excluded from the tables, his *constitutional rights* have been violated. I do not subscribe to that theory. No one should, least of all the Justices of the Supreme Court.

\*    \*    \*

Today's decision upends decades of our cases, violates a federal statute, and opens a whole new boutique of constitutional jurisprudence ("plea-bargaining law") without even specifying the remedies the boutique offers. The result in the present case is the undoing of an adjudicatory process that worked *exactly* as it is supposed to. Released felon Anthony Cooper, who shot repeatedly and gravely injured a woman named Kali Mundy, was tried and convicted for his crimes by a jury of his peers, and given a punishment that Michigan's elected representatives have deemed appropriate. Nothing about that result is unfair or unconstitutional. To the contrary, it is wonderfully just, and infinitely superior to the trial-by-bargain that today's opinion affords constitutional status. I respectfully dissent.

————————

[3] See *People* v. *Cooks*, 446 Mich. 503, 510, 521 N. W. 2d 275, 278 (1994); 6 W. LaFave, J. Israel, N. King, & O. Kerr, Criminal Procedure §22.1(e) (3d ed. 2007 and Supp. 2011–2012).

# SUPREME COURT OF THE UNITED STATES

_____

No. 10–209

_____

## BLAINE LAFLER, PETITIONER *v.* ANTHONY COOPER

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF
APPEALS FOR THE SIXTH CIRCUIT

[March 21, 2012]

JUSTICE ALITO, dissenting.

For the reasons set out in Parts I and II of JUSTICE SCALIA's dissent, the Court's holding in this case misapplies our ineffective-assistance-of-counsel case law and violates the requirements of the Antiterrorism and Effective Death Penalty Act of 1996. Respondent received a trial that was free of any identified constitutional error, and, as a result, there is no basis for concluding that respondent suffered prejudice and certainly not for granting habeas relief.

The weakness in the Court's analysis is highlighted by its opaque discussion of the remedy that is appropriate when a plea offer is rejected due to defective legal representation. If a defendant's Sixth Amendment rights are violated when deficient legal advice about a favorable plea offer causes the opportunity for that bargain to be lost, the only logical remedy is to give the defendant the benefit of the favorable deal. But such a remedy would cause serious injustice in many instances, as I believe the Court tacitly recognizes. The Court therefore eschews the only logical remedy and relies on the lower courts to exercise sound discretion in determining what is to be done.

Time will tell how this works out. The Court, for its part, finds it unnecessary to define "the boundaries of proper discretion" in today's opinion. *Ante,* at 13. In my view, requiring the prosecution to renew an old plea offer

would represent an abuse of discretion in at least two circumstances: first, when important new information about a defendant's culpability comes to light after the offer is rejected, and, second, when the rejection of the plea offer results in a substantial expenditure of scarce prosecutorial or judicial resources.

The lower court judges who must implement today's holding may—and I hope, will—do so in a way that mitigates its potential to produce unjust results. But I would not depend on these judges to come to the rescue. The Court's interpretation of the Sixth Amendment right to counsel is unsound, and I therefore respectfully dissent.